VICTOR F. HORST *vs.* COMMISSIONER OF REVENUE.

Suffolk. January 7, 1983. — May 13, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, & LYNCH, JJ.

*Taxation,* Income tax, Instalment transactions, Nonresident. *Due Process of Law,* Taxation.

A nonresident taxpayer who elected for Federal and State income tax purposes to pay tax on an instalment basis on the gain from the sale of Massachusetts real estate was subject to Massachusetts income tax under G. L. c. 62, § 63, on the interest earned on the instalment obligation note. [179-182]

A tax upon a nonresident's interest income directly and solely traceable to a sale of real property in Massachusetts was within the limits of the State's taxing power as embodied in the due process clause of the Fourteenth Amendment to the Federal Constitution. [182-183]

APPEAL from a decision of the Appellate Tax Board.

*Jerald D. Burwick (Harris T. Luscomb, III,* with him) for the taxpayer.

*Paul R. Matthews,* Assistant Attorney General, for the Commissioner of Revenue.

LYNCH, J. The question presented by this appeal is whether a nonresident who elects for Federal and State income tax purposes to pay tax on an instalment basis on a gain from the sale of Massachusetts real estate, see Int. Rev. Code of 1954, § 453(b), and G. L. c. 62, § 63, is subject to Massachusetts income tax under G. L. c. 62, § 63, on the interest earned on the instalment obligation note. The taxpayer appealed to the Appellate Tax Board (board) from the refusal of the Commissioner of Revenue (Commissioner) to abate income taxes, paid from 1975 through 1978. The appeal to the Appellate Tax Board was argued on a stipulation of facts.

On December 18, 1974, the taxpayer, a domiciliary of Florida, sold a parcel of land he owned in Chatham to the town of Chatham for the sum of $700,000. He received $90,000 cash and a note for $610,000, payable over a five-year period, bearing interest at the annual rate of 8%. Of the selling price, $657,188 represented a capital gain on the transaction. The taxpayer entered into an agreement with the Massachusetts Income Tax Bureau (bureau) to pay the Massachusetts tax in instalments. To secure payment of this tax, the taxpayer submitted to the bureau a letter of credit from the Chatham Trust Company in the amount of $51,542.65. See G. L. c. 62, § 63(*d*).[1] During the years 1975 through 1978, the taxpayer reported gains on the sale and paid Massachusetts income taxes thereon. For each of these years, the bureau also required the taxpayer to pay income tax on the interest received on the note. The taxpayer challenged the imposition of income tax on the interest as being contrary to the provisions of G. L. c. 62, § 63, and as violative of the Fourteenth Amendment's limitation on the State's authority to tax nonresidents. The board promulgated a decision with findings and an opinion, holding the interest taxable. We affirm the decision.

---

[1] General Laws c. 62, § 63(*d*), as appearing in St. 1973, c. 723, § 11, provides: "If installment transaction treatment under this paragraph is elected for any taxable year no further modifications with respect to installment transactions of such taxable year shall be made to federal gross income [in] determining Massachusetts gross income for such taxable year or for any subsequent taxable year of any person. There shall be computed the excess, if any, of the tax which would have been imposed under this chapter for the taxable year had the method of paragraph (*e*) of this section been elected over the tax actually imposed by this chapter for such taxable year. The person making the election shall deposit with the commissioner security, in a form satisfactory to the commissioner, in an amount equal to such excess for the payment of future taxes under this chapter. When all federal gross income to be included with respect to installment transactions of such taxable year has been included in federal gross income, and all resulting taxes have been paid to the commonwealth, the commissioner shall release the security deposited for such taxable year. The commission shall by regulation provide for proportionate releases in intervening years. All items of federal gross income arising from such installment transactions shall be deemed to be income from sources within the commonwealth."

General Laws c. 62, § 63, permits taxation of a capital gain as an instalment transaction for a taxpayer reporting on an instalment basis for Federal income tax purposes. Section 63(c) provides in part: "Any persons having an installment transaction in a taxable year shall file a return for such taxable year and shall . . . file with the return an election to be treated either under paragraph (d) or (e) of this section."[2] The taxpayer elected to pay Massachusetts taxes on the instalment basis provided by § 63(d), which provides in part: "If installment transaction treatment under this paragraph is elected for any taxable year no further modifications with respect to installment transactions of such taxable year shall be made to federal gross income [in] determining Massachusetts gross income for such taxable year or for any subsequent taxable year of any person." The board ruled that the taxpayer conceded that the interest income from the note was part of his Federal gross income. Cf. *Rohrbough, Inc.* v. *Commissioner of Revenue*, 385 Mass. 830, 831-832 (1982); *B. W. Co.* v. *State Tax Comm'n*, 370 Mass. 18, 20 (1976). Thus the terms of § 63(d), providing that "no further modifications . . . shall be made to federal gross income [in] determining Massachusetts federal gross income," suggest an intent to include that interest income for the purposes of § 63(d). This conclusion is considerably strengthened by the Legislature's amendment, by St. 1973, c. 723, § 11, of G. L. c. 62, § 63(d), which added the following language: "All items of federal gross income arising from such installment transactions shall be deemed to be income from sources within the commonwealth." Interpreting this language according to its usual and ordinary meaning considered in the light of the legislative aim, see *Nantucket Conservation Found., Inc.* v. *Russell Management, Inc.*, 380 Mass. 212, 214 (1980), quoting *Prudential Ins. Co.* v. *Boston*, 369 Mass. 542, 546 (1976); *Burke* v.

---

[2] Under par. (d) the gain is spread over a term of years and the tax is paid on each instalment as on the Federal return. Under par. (e) the tax is paid all at once at the time of election.

*Chief of Police of Newton,* 374 Mass. 450, 452 (1978), we conclude that the Legislature intended that interest arising from instalment transactions be taxable Massachusetts income under G. L. c. 62, § 63(*d*).[3]

The taxpayer urges that this interpretation of G. L. c. 62, § 63(*d*), creates a conflict with the provisions of G. L. c. 62, § 5A. Section 5A, which relates to taxation of income earned by nonresidents, provides in material part: "The Massachusetts gross income shall be determined solely with respect to items of gross income from sources within the commonwealth of such person . . . . Items of gross income from sources within the commonwealth are items of gross income . . . derived from the ownership of any interest in real or tangible personal property located in the commonwealth." The taxpayer concedes that the gain realized on a sale of real estate located in the Commonwealth is income derived from ownership of an interest in real property and taxable under G. L. c. 62, § 5A. He argues, however, that the interest was earned on the note after he ceased to hold an interest in the real estate. Thus, he contends, the interest derives from an intangible asset and is exempted from taxation by § 5A. Cf. *Johnson* v. *Department of Revenue,* 387 Mass. 59, 61 (1982), citing *Dogon* v. *State Tax*

---

[3] The taxpayer argues that, if instalment note interest is deemed includable in a § 63(*d*) election, an election under § 63(*e*) (providing for further modification and reduction of federal gross income where taxpayer pays all Massachusetts tax on the gain in the year of sale) would have the "unintended result" of enabling a resident taxpayer to avoid paying tax on the interest except in the year of sale. The board, noting that the State would not have taxed interest received by this taxpayer had he elected to pay taxes under G. L. c. 62, § 63(*e*), does not appear to view this as an inconsistent or unintended result, but as the consequence of electing the alternative provided by the statute, i.e., to pay the full tax due in the year of the sale. While this appeal presents no specific question with respect to § 63(*e*), we cannot say that the exclusion of interest income, if permitted by that section, would alone compel an interpretation that § 63 (*d*) requires the same exclusion, particularly where the terms of the two subsections differ distinctly. "The words of a statute are the prime indicator of its meaning." *Nantucket Conservation Found., Inc.* v. *Russell Management, Inc.,* 380 Mass. 212, 214 (1980).

*Comm'n,* 370 Mass. 699, 701 (1976). The board upheld the taxation of interest income on the basis that such interest was derived from the ownership of interest in real property located within the Commonwealth. We agree with the board's conclusion.

By St. 1973, c. 723, the Legislature amended both § 63 and § 5A of G. L. c. 62. To § 63(*d*), as we have noted, was added the language, "All items of federal gross income arising from such installment transactions shall be deemed to be income *from sources within the commonwealth*" (emphasis supplied). As the board noted, the emphasized language had heretofore appeared only in G. L. c. 62, § 5A ("The Massachusetts gross income shall be determined solely with respect to items of gross income *from sources within the commonwealth . . .*") (emphasis supplied). Prior to its amendment by St. 1973, c. 723, § 2, § 5A defined such income as that "*derived from or connected with* any business, trade, profession or occupation carried on in the commonwealth *or the ownership of any interest* in real or tangible personal property located in the commonwealth" (emphasis supplied). St. 1971, c. 555, § 5A. The 1973 amendment of § 5A added the words "or *derived from* the ownership of any interest in real . . . property" (emphasis supplied). We give effect to the Legislature's repeating the words "derived from" with respect to ownership of interest in property. See *Chatham Corp.* v. *State Tax Comm'n,* 362 Mass. 216, 219 (1972). We agree with the Commissioner that the interest on the note was derived from an interest in ownership in real property within the meaning of § 5A. In our view, the time of the taxpayer's transfer of his interest in the property does not alter the derivative nature of that income or transform the transaction into one involving an intangible asset unrelated in origin to an interest in property located within the Commonwealth. When §§ 63(*d*) and 5A are read together, as the board suggests the Legislature intended they should be, by its simultaneous amendment of both provisions, the intent to include interest arising from instal-

ment transactions as taxable Massachusetts income is manifest.[4]

The taxpayer also contends that taxing a nonresident on interest income on such a promissory note would violate the limitation, under the Fourteenth Amendment to the Constitution of the United States, of a State's authority to tax nonresidents. It is well settled that "a State may impose general income taxes . . . upon incomes accruing to nonresidents from their property or business within the State, or their occupations carried on therein." *Shaffer* v. *Carter*, 252 U.S. 37, 52 (1920). To impose such a tax on nonresidents, "due process requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Miller Bros.* v. *Maryland*, 347 U.S. 340, 344-345 (1954). It is not questioned here that the ownership of property within the State creates a sufficient nexus between the State and the nonresident owner. "As to non-residents, the jurisdiction extends only to [the owner's] property owned within the State and [the owner's] business, trade, or profession carried on therein, and the tax is only on such income as is derived from those sources." *Shaffer* v. *Carter, supra* at 57.

The taxpayer seeks to divorce his interest income from the category of "such income as is derived from those sources." He asserts that its intangible nature as interest on a note takes it

---

[4] The taxpayeer argues that the only reasonable interpretation of the 1973 amendment of G. L. c. 62, § 63(*d*), is that it applies only to the gain realized on an instalment sale. Citing an older version of § 63(*c*), he contends that the Legislature intended by the 1973 amendment to ensure, by making the requirement for security mandatory, that the tax on the gain would be paid in the event that the taxpayer moved out of State, died, or disposed of the note. He avers that the Commissioner required him to provide security in the exact amount of taxes which would have been paid on the gain, but not the interest, if he had not elected an instalment sale. However, the security required by § 63(*d*) is based on the taxes which would have been due "had the method of paragraph (*e*) of [the] section been elected." See note 2, *supra*.

The taxpayer's reliance on an earlier version of the statute, as well as a Massachusetts income tax regulation promulgated prior to 1973, must yield to the language of the revised statute.

out of the realm of income taxable to nonresidents.   This argument distorts the relationship of the income to the sale of the property, from which it arose and to which it remains connected.   The taxpayer raises no question with respect to the State's right to tax the principal on the note, but would have the interest viewed as somehow disembodied from the sale transaction.   We think that such a view strains the definition of income derived from the ownership of property.   A tax upon the interest as income directly and solely traceable to the sale of such property, in connection with which the seller has the benefit and protection of the laws of the Commonwealth, is within the permissible limits of the Fourteenth Amendment.[5]   See *Mobil Oil Corp.* v. *Commissioner of Taxes,* 445 U.S. 425, 440 (1980); *Frost* v. *Commissioner of Corps. & Taxation,* 363 Mass. 235, 246, appeals dismissed, 414 U.S. 803 (1973), discussing *Greenough* v. *Tax Assessors of Newport,* 331 U.S. 486, 495-496 (1947) (in upholding a Rhode Island ad valorem tax on intangibles held in trust, where one of two trustees resided in Rhode Island, "the [C]ourt concluded that the cotrustee had the benefit and protection of the availability of the law of Rhode Island and, minimal as that benefit and protection were, they were sufficient to sustain the Rhode Island tax against a charge that it violated the due process clause of the Fourteenth Amendment").   Since the taxpayer here has elected to pay his tax on an instalment basis, which the Legislature has provided for his benefit and convenience, he is bound by the statutory terms of that election.

The decision of the Appellate Tax Board is affirmed.

*So ordered.*

---

[5] In light of our conclusion, we do not reach the taxpayer's argument that the situs of an intangible asset is the domicil of the owner.