TRUCK RENTING & LEASING ASSOCIATION, INC., & another[1] *vs.*
COMMISSIONER OF REVENUE.

Suffolk. December 6, 2000. - April 17, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Taxation,* Corporate excise. *Constitutional Law,* Taxation, Commerce clause.
*Due Process of Law,* Taxation.

This court concluded that a corporate excise tax under G. L. c. 63, § 39,
imposed on a foreign corporation that leased vehicles to persons who oper-
ated such vehicles in various States, including Massachusetts, did not
violate the Federal due process clause, where the presence of the vehicles
in Massachusetts through the lease agreements established the requisite
physical connection with the Commonwealth to support taxation of the
income earned as a result of the lessees' activities here [736-740], or the
commerce clause, where the tax was applied to activities with a substantial
nexus to the Commonwealth, was fairly apportioned, did not discriminate
against interstate commerce, and was fairly related to the services provided
by the Commonwealth [740-741].

CIVIL ACTION commenced in the Superior Court Department on
July 22, 1998.

The case was reported to the Appeals Court by *Charles F.
Barrett,* J., on a statement of agreed facts. The Supreme Judicial
Court granted a request for direct review.

*Richard P. Schweitzer,* of the District of Columbia (*Wesley S.
Chused* with him) for the plaintiffs.

*Thomas A. Barnico,* Assistant Attorney General, for the
defendant.

COWIN, J. This case presents the issue whether, consistent
with the Federal due process and commerce clauses,[2] the Com-
monwealth can impose a corporate excise tax pursuant to G. L.

[1]Adams International Trucks, Inc.

[2]The commerce clause authorizes Congress to "regulate Commerce . . .
among the several States."

c. 63, § 39,[3] on a foreign corporation[4] that leases vehicles to persons who operate such vehicles within various States, including Massachusetts. We conclude that the tax does not violate either constitutional provision.

1. *Background.* We briefly summarize the statement of agreed facts. Truck Renting and Leasing Association, Inc. (TRALA), is a national trade association of over 600 companies in the business of leasing and renting trucks for commercial and consumer use.[5] Adams International Trucks, Inc. (Adams), a Delaware corporation with its usual place of business in Charlotte, North Carolina, is a member of TRALA and, through its wholly owned division, Ideal Leasing, rents and leases trucks to businesses and individuals.

In the relevant tax years, 1991 through 1996, neither Adams nor Ideal Leasing entered into rental or lease agreements in Massachusetts; maintained offices or other facilities in Massachusetts; employed personnel in Massachusetts; solicited business in Massachusetts; owned real property in Massachusetts; domiciled trucks or other personal property in Massachusetts; or was qualified to do business in Massachusetts. Ideal Leasing rented and leased vehicles from its usual place of business in North Carolina.[6] The vehicles were leased pursuant to "operating leases," under which Adams retained ownership of the leased vehicles and the lessees were granted "exclusive dominion and control at all times."

On behalf of its lessees, Ideal Leasing provided licensing and

---

[3]General Laws c. 63, § 39, provides in relevant part: "[E]very foreign corporation . . . owning or using any part or all of its capital, plant or any other property in the commonwealth, shall pay [the corporate excise]." Title 830 Code Mass. Regs. § 63.39.1(4)(d)(1) (1993) states that a foreign corporation "owns or uses property in Massachusetts" if it "owns property that is held by another in Massachusetts under a lease."

[4]A "foreign corporation" is defined as a corporation "established, organized or chartered under laws other than those of the commonwealth." G. L. c. 63, § 30 (2).

[5]TRALA makes no claims independent of those made by Adams.

[6]The parties have agreed that "[t]he term 'rental' is a term of art in the truck leasing industry, generally meaning a transaction granting the exclusive use of a vehicle for . . . [thirty] days or fewer, whereas a lease generally means a transaction granting the exclusive use of a vehicle for more than [thirty] days." As this distinction has no bearing on this opinion, we use the term "lease" to include rental agreements.

registration services through the North Carolina Department of Transportation (North Carolina) and the international registration plan. Pursuant to this plan, companies operating commercial vehicles in more than one State register with their base State and pay an apportioned registration fee to the other States. In each taxable year, Ideal Leasing paid registration fees to North Carolina, which then allocated and dispersed the fees to each State in which the vehicles were operated, including Massachusetts, based on the percentage of miles traveled by the fleet in each State.

Ideal Leasing also provided lessees with fuel tax licensing services. From 1992 through 1995, Adams purchased 164 fuel tax decals for its vehicles from the Massachusetts Department of Revenue.[7] In 1996, Massachusetts joined the international fuel tax agreement, under which companies operating commercial vehicles in more than one State obtain a fuel tax license in their base State as well as fuel tax licenses and decals for each State in which their vehicles operate. Ideal Leasing remits fuel tax to each State and makes quarterly reports of fuel purchases and mileage by vehicle by State to North Carolina. In order to provide these licensing, registration, and fuel tax services, Ideal Leasing requires lessees to submit reports detailing the number of miles traveled by each vehicle in each State.

From 1992 through 1996 (see note 7, *supra*), a portion of Adams's fleet of leased vehicles logged 14,987 miles on Massachusetts roads. During these trips, some of the lessees made pickups or deliveries within the Commonwealth. Ideal Leasing received income from the leasing of these vehicles. Neither Adams nor Ideal Leasing prohibited any of its vehicles from being operated within Massachusetts or exercised control over the scheduling, routing, or destinations of these vehicles. During the time these vehicles were operated within Massachusetts, the Commonwealth provided a number of benefits and protections for the lessors' vehicles, including police, fire, medical emergency, court, and road maintenance services, as well as truck and rest stop areas.

In April, 1997, the Commissioner of Revenue (commissioner)

[7]No records are available for 1991.

sent Adams a "Notice of Failure to File Return," informing it that it failed to file a corporate excise tax for calendar years 1991 through 1996. The commissioner issued a subsequent notice of assessment, and Adams filed applications for abatement, which the commissioner denied. After receipt of a tax bill and final notice, Adams and TRALA filed their complaint in the Superior Court seeking declaratory relief. The complaint requested a declaration that the Commonwealth's corporate excise tax, under G. L. c. 63, § 39, and 830 Code Mass. Regs. § 63.39.1(4)(d)(1), as applied to Adams violates the due process clause and the commerce clause.[8] The parties filed a joint motion to report the case without decision to the Appeals Court, which was allowed. We then granted the parties' joint application for direct appellate review.

2. *Discussion.* The Commonwealth's ability to tax a foreign corporation, such as Adams, is limited by the provisions of the due process clause and the commerce clause. Adams asserts that the corporate excise tax, G. L. c. 63, § 39, fails under both provisions. In reviewing Adams's contentions, we presume the tax is constitutionally valid unless the party challenging it proves the tax invalid "beyond a rational doubt." *Andover Sav. Bank* v. *Commissioner of Revenue*, 387 Mass. 229, 235 (1982). See *Aloha Freightways, Inc.* v. *Commissioner of Revenue*, 428 Mass. 418, 423 (1998).

a. *Due process.* For the excise tax to survive due process scrutiny, there must be "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Horst* v. *Commissioner of Revenue*, 389 Mass. 177, 182 (1983), quoting *Miller Bros.* v. *Maryland*, 347 U.S. 340, 344-345 (1954). See *Quill Corp.* v. *North Dakota*, 504 U.S. 298, 306 (1992). In addition, the "income attributed to the State for tax purposes must be rationally related to 'values connected with the taxing State.' " *Id.*, quoting *Moorman Mfg. Co.* v. *Bair*, 437 U.S. 267, 273 (1978). Adams only contests whether the minimum contacts requirement is satisfied in this case.

---

[8]Adams also challenged the tax as applied to similarly situated foreign leasing operations. To the extent that a foreign leasing operation's contacts with the Commonwealth are substantially similar to Adams's contacts, as presented here, our decision applies to these businesses as well.

The Supreme Court of the United States and this court have consistently concluded that due process considerations do not bar enforcement of an income tax assessed against nonresidents when that income was derived from property present in the taxing State. See, e.g., *Shaffer* v. *Carter*, 252 U.S. 37, 52 (1920) ("just as a State may impose general income taxes upon its own citizens and residents," a State may also impose a tax on "incomes accruing to non-residents from their property or business within the State"); *Horst* v. *Commissioner of Revenue, supra* at 182, quoting *Shaffer* v. *Carter, supra* at 52, 57. The issue here is whether due process would bar enforcement of an excise tax imposed on a nonresident taxpayer who earned income from the presence of its leased property in the Commonwealth, but who has no other physical presence in the taxing State.

We conclude that the presence of Adams's vehicles in this State through its lease agreements established the requisite physical connection with the Commonwealth to support a State tax on the income earned as a result of the lessees' activity in Massachusetts. Adams's vehicles traveled thousands of miles within Massachusetts by virtue of Ideal Leasing's lease arrangements. The presence of Adams's vehicles in the Commonwealth and the use of Massachusetts roads generated income for Adams.[9] This income was "derived from the ownership of property" in this State. *Horst* v. *Commissioner of Revenue, supra* at 183. Stated differently, there is a direct relationship between the income Adams earned and the use of its property (the vehicles it owned), "from which [the income] arose and to which it remains connected." *Id.* The tax on Adams's income is "directly and solely traceable" to the use of its property, "in connection with which the [lessor] has the benefit and protection of the laws of the Commonwealth." *Id.*

The minimum connection required under due process also can be satisfied by contacts other than physical presence. In *Quill Corp.* v. *North Dakota, supra* at 307, the Supreme Court

---

[9]To lease Adams's vehicles, lessees paid a fixed lease charge and a mileage charge based on the number of miles that the lessees traveled in Adams's trucks. Although Adams contends that it is not concerned with *where* lessees accumulate their mileage, the fact remains that some of the lessees accumulated mileage within Massachusetts and Adams facilitated their doing so and earned income from that mileage.

employed principles of personal jurisdiction in reviewing the constitutionality of a use tax assessed against an out-of-State vendor. The Court explained that it has "abandoned more formalistic tests that focused on a defendant's 'presence' within a State in favor of a more flexible inquiry into whether a defendant's contacts with the forum made it reasonable, in the context of our federal system of Government, to require it to defend the suit in that State." *Id.* Pursuant to this test, "if a foreign corporation purposefully avails itself of the benefits of an economic market in the forum State, it may subject itself to the State's *in personam* jurisdiction even if it has no physical presence in the State." *Id.* The Court concluded that "to the extent that our decisions have indicated that the Due Process Clause requires physical presence in a State for the imposition of duty to collect a use tax, we overrule those holdings as superseded by developments in the law of due process." *Id.* at 308. Borrowing "[c]omparable reasoning" from its personal jurisdiction cases, the Court held that the requirements of due process were met where the foreign corporation at issue had "engaged in continuous and widespread solicitation of business" within the taxing State. *Id.*

In this case, a lessor, such as Adams, that allows and facilitates its lessees to use its property within the taxing State purposefully avails itself of the "privilege of conducting activities" within that State. *Hanson* v. *Denckla,* 357 U.S. 235, 253 (1958). While Adams's vehicles were in Massachusetts, the Commonwealth provided services and protections, including police, fire, medical emergency, and road maintenance services, and truck and rest stop areas. Although Adams did not exercise control over the routing or destination of its vehicles, Adams maintained ownership of its vehicles, knew that its lessees operated its vehicles within Massachusetts, intended that they do so, and monitored the condition of its vehicles while they were in Massachusetts. Adams paved the way for lessees to operate the vehicles throughout Massachusetts by providing the requisite registration and licensing services. Its division, Ideal Leasing, paid vehicle registration fees, a portion of which were dispersed to Massachusetts based on a percentage of the total miles Adams's vehicles traveled within Massachusetts. Adams (or Ideal

Leasing) purchased fuel tax decals and a fuel tax license for Massachusetts, and Ideal Leasing remitted fuel taxes that were allocated and dispersed to each State of operation, including, in this case, Massachusetts.[10]

Adams's contacts with the Commonwealth were not the result of "the unilateral activity of another party or a third person." *Burger King Corp.* v. *Rudzewicz,* 471 U.S. 462, 475 (1985), quoting *Helicopteros Nacionales de Colombia, S.A.* v. *Hall,* 466 U.S. 408, 417 (1984). Rather, Adams knew in advance whether the lessees expected to travel within Massachusetts, and it intentionally and purposefully facilitated these trips by arranging for the necessary State permits, licenses, and insurance.[11] In addition, Adams charged lessees based on their expected use of the vehicles, including whether they expected to travel within the Commonwealth.[12] Although "the income derived from property located in a state comes to the owner indirectly in the form of rent under a lease . . . it is the taxing state that has provided the source [for the income] by providing and maintaining the economic setting out of which the owner reaps its profit." *American Refrigerator Transit Co.* v. *State Tax Comm'n,* 238 Or. 340, 348 (1964) (income earned from leasing refrigerator cars, in which goods were shipped into and out of Oregon, was subject to tax). Adams's contacts with this State therefore are

---

[10]The fact that Adams maintained ownership of its trucks and took additional steps (i.e., providing licensing and registration services) that would allow its trucks to access the Commonwealth's roads, and hence its economic market, distinguishes it from the foreign corporation at issue in *Asahi Metal Indus. Co.* v. *Superior Court,* 480 U.S. 102, 112 (1987) (plurality opinion of O'Connor, J.). There, a plurality of the Supreme Court held that placing a product into "the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* However, according to the Court, other conduct, such as "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State," could indicate that the defendant has purposefully directed its activities to the forum State. *Id.*

[11]Pursuant to Adams's standard vehicle and lease service agreement, lessees notified Adams of the States in which they would require vehicle registration.

[12]According to Adams's standard vehicle lease and service agreement, the "expected use" of its vehicles is an "inherent factor[]" in the determination of the fee charged lessees.

sufficient to establish the minimum connection required under due process.

b. *Commerce clause.* In addition to satisfying due process concerns, a State tax must comport with the commerce clause. The requirements under due process and the commerce clause are phrased similarly, but they are not identical. See *Quill Corp. v. North Dakota, supra* at 312. The commerce clause is informed "by structural concerns about the effects of state regulation on the national economy" and, specifically, any burden on interstate commerce caused by a State tax obligation. *Id.* A State tax will withstand a challenge under the commerce clause as long as it "[1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State." *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279 (1977). See *Aloha Freightways, Inc. v. Commissioner of Revenue,* 428 Mass. 418, 421 (1998). Adams contends only that it lacks a "substantial nexus" with the Commonwealth. We therefore limit our discussion to that requirement.

The "substantial nexus" requirement "seeks to prevent over-reaching by States, and limits a State's ability to tax businesses operating within interstate commerce which lack a sufficient connection to the taxing State."[13] *Aloha Freightways, Inc. v. Commissioner of Revenue, supra* at 423. See *Quill Corp. v. North Dakota, supra* at 313 (substantial nexus requirement provides "means for limiting state burdens on interstate commerce"). If Adams itself operated its vehicles within Massachusetts, the income it earned from this activity clearly could be the subject of a corporate excise tax. It essentially would be indistinguishable from the taxpayer in *Aloha Freightways, Inc.*

---

[13]In *Quill Corp. v. North Dakota,* 504 U.S. 298, 317 (1992), the Court upheld a "physical-presence requirement" before a State, consistent with the commerce clause, could subject an out-of-State vendor to a use or sales tax. The court did not extend this rule to other types of taxes. See *id.* at 314 ("we have not, in our review of other types of taxes, articulated the same physical-presence requirement"). See also *Couchot v. State Lottery Comm'n,* 74 Ohio St. 3d 417, 424-425, cert. denied, 519 U.S. 810 (1996); *Geoffrey, Inc. v. South Carolina Tax Comm'n,* 313 S.C. 15, 23 n.4, cert. denied, 510 U.S. 992 (1993); *Borden Chems. & Plastics v. Zehnder,* 312 Ill. App. 3d 35, 43 (2000). Neither party has argued that such a requirement would apply to the tax at issue here.

v. *Commissioner of Revenue, supra.* The fact that a lessee rather than Adams drove the trucks within Massachusetts does not dictate a different result.

Our decision in *Aloha Freightways, Inc.* v. *Commissioner of Revenue, supra,* focused on the contacts of the taxpayer's *property* (its trucks) and *activity* (the operation of the trucks in Massachusetts) with the Commonwealth, not on the identity of the taxpayer. We concluded that the numerous trips, the customers served, and the miles traveled within Massachusetts constituted sufficient contact "to establish 'nexus,' and justify the imposition of the . . . corporate minimum excise." *Id.* at 423. We reach the same result here. Adams's vehicles were physically present in the Commonwealth. Its vehicles represent the income-generating property of Adams's rental and leasing operation. And Adams, together with Ideal Leasing, provided administrative services for its customers (i.e., registration and licensing services) that were required as a legal matter so that its vehicles could be operated in the Commonwealth.[14]

The tax does not inhibit interstate commerce in any way. It is simply the cost of using Massachusetts roads for profit and enjoying the concomitant benefits and services offered by this State. See *Complete Auto Transit, Inc.* v. *Brady, supra* at 279, quoting *Western Live Stock* v. *Bureau of Revenue,* 303 U.S. 250, 254 (1938) ("It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business").

The contacts here were sufficient both to satisfy due process and establish a "substantial nexus" with the Commonwealth for commerce clause purposes. We thus conclude that the application of G. L. c. 63, § 39, to Adams's renting and leasing business withstands the challenges presented in this case.

The case is remanded to the Superior Court for the entry of a

---

[14]Adams relies on *Marx* v. *Truck Renting & Leasing Ass'n, Inc.,* 520 So. 2d 1333 (Miss. 1987), to argue that the presence of its trucks in Massachusetts while under the control of lessees was not sufficient to establish a substantial nexus as required by the commerce clause. We decline to adopt the reasoning of the court in *Marx.*

judgment declaring the rights of the parties consistent with this opinion.

*So ordered.*