ALOHA FREIGHTWAYS, INC. *vs.* COMMISSIONER OF REVENUE.

Suffolk. October 9, 1998. - November 19, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Taxation,* Corporate excise. *Constitutional Law,* Taxation, Commerce clause, Interstate commerce. *Administrative Law,* Substantial evidence.

Discussion of the commerce clause of the United States Constitution and the power of a State to tax foreign corporations. [420-423]

The Appellate Tax Board correctly concluded that G. L. c. 63, § 39, establishing an excise tax imposed on foreign corporations, applied to the activities of an Illinois-based trucking company with a substantial nexus with the Commonwealth [423]; that the tax was fairly related to the services provided by the Commonwealth [423-425]; that the tax was fairly apportioned [425-427]; and that it did not discriminate against interstate commerce [428]: consequently, the statute was valid under the commerce clause of the United States Constitution.

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Wesley S. Chused* for the taxpayer.

*Thomas A. Barnico,* Assistant Attorney General, for Commissioner of Revenue.

*Daniel R. Barney, Robert Digges, Jr., & George A. Berman* for American Trucking Associations, Inc., amicus curiae, submitted a brief.

IRELAND, J. This case concerns a challenge to G. L. c. 63, § 39, which establishes the excise imposed on foreign corporations. In 1987, the Commissioner of Revenue (commissioner) determined that Aloha Freightways, Inc. (Aloha), an Illinois-based trucking company, had a substantial nexus with Massachusetts, triggering the imposition of an excise under G. L. c. 63, § 39. Aloha was notified that it had failed to file corporate excise returns for the years 1980 through 1986. Aloha then filed its 1986 return, paid $228 (the then existing minimum corporate

excise)[1] and filed an application for an abatement. See G. L. c. 62C, § 37. The commissioner denied the abatement, and Aloha appealed to the Appellate Tax Board (board). See G. L. c. 62C, § 39. The board affirmed the commissioner's denial of the abatement. The board concluded that (1) by using its trucks in the Commonwealth Aloha is "doing business" in the Commonwealth and, consequently, is subject to the § 39 corporate excise; (2) imposition of the excise does not violate the commerce clause because Aloha has a "substantial nexus" with the Commonwealth; (3) the corporate excise is fairly apportioned; (4) the excise does not discriminate against interstate commerce; and (5) the excise is fairly related to the in-State activities of Aloha. Aloha appealed from the board's decision under G. L. c. 58A, § 13. We transferred the appeal on our own initiative and now affirm the board's decision.

1. *Background.* We recite the facts briefly.[2] Aloha is an Illinois corporation that specializes in transporting machinery throughout the country on flatbed trailers. During 1986, the year in question, Aloha had thirty trucks in operation. Aloha operated as a certified interstate motor carrier of property under certificates of public convenience and necessity issued to Aloha by the Interstate Commerce Commission (ICC).[3] Aloha registered its ICC authority in each State it served, including Massachusetts. As part of its registration with Massachusetts, Aloha purchased registration stamps covering sixteen of its vehicles. Aloha obtained special fuel user licenses and decals for its tractor units from the Department of Revenue (department) at a cost of $483.

During 1986 Aloha used more than twenty different trucks to make fifty-four trips to the Commonwealth to pick up and deliver machinery. The typical freight delivery consisted of heavy machinery with an average weight of 16,000 pounds, and an average dimension of ten cubic feet. Aloha picked up or delivered equipment in thirty-two separate Massachusetts cities and towns. In making these pickups and deliveries Aloha's

[1]In 1986 the minimum excise was $200 plus a surtax of fourteen per cent, for a total of $228. St. 1969, c. 546, § 18. The current minimum excise is $400 plus the fourteen per cent surtax, for a total of $456. St. 1988, c. 202, § 18.

[2]The facts are drawn both from the board's decision and the record.

[3]The Interstate Commerce Commission and the Interstate Commerce Act were terminated by the ICC Termination Act of 1995. Pub. L. No. 104-88, 109 Stat. 803.

trucks traveled 10,926 miles on Massachusetts roads, and billed more than $55,000 for its services related to Massachusetts. Aloha did not make any intrastate shipments within Massachusetts. It either shipped goods into Massachusetts from another State, or picked up goods in Massachusetts for delivery out of State.

During 1986 Aloha did not own or lease any property in Massachusetts, nor did it advertise or otherwise solicit business in Massachusetts. Customers contacted Aloha at its Illinois headquarters. None of Aloha's drivers was a resident of Massachusetts. If they were required to stay overnight in Massachusetts, they would sleep in their tractor units.

2. *General Laws c. 63, § 39.* "[E]very foreign corporation, exercising its charter, or qualified to do business or actually doing business in the commonwealth, or owning or using any part or all of its capital, plant or any other property in the commonwealth, shall pay [the corporate excise]." G. L. c. 63, § 39. The excise imposed is the "greater" of either a combination of property tax and income tax amounts designated in § 39 (*a*), or the statutory minimum of $200 set out in § 39 (*b*). Section 39 further provides:

> "The excise levied herein is due and payable on any one or all of the following alternative incidents:
>
> "(1) The qualification to carry on or do business in this state or the actual doing of business within the commonwealth in a corporate form. The term 'doing business' as used herein shall mean and include each and every act, power, right, privilege, or immunity exercised or enjoyed in the commonwealth, as an incident to or by virtue of the powers and privileges acquired by the nature of such organizations, as well as, the buying, selling or procuring of services or property.
>
> "(2) The exercising of a corporation's charter or the continuance of its charter within the commonwealth.
>
> "(3) The owning or using any part or all of its capital, plant or other property in the commonwealth in a corporate capacity.
>
> "It is the purpose of this section to require the payment of this excise to the commonwealth by foreign corporations

for the enjoyment under the protection of the laws of the commonwealth, of the powers, rights, privileges and immunities derived by reason of the corporate form of existence and operation."

3. *The commerce clause.* The Commonwealth's power to tax foreign corporations is constrained by the Federal government's broad power to regulate interstate commerce under the commerce clause of the United States Constitution. The commerce clause grants Congress the power "to regulate commerce with foreign nations, and among the several States." The commerce clause seeks to foster and protect economic intercourse between the States. "The very purpose of the Commerce Clause [is] to create an area of free trade among the several States." *McLeod* v. *J.E. Dilworth Co.*, 322 U.S. 327, 330 (1944).

When a State imposes a tax that touches on interstate commerce it implicates the dormant commerce clause. "[W]e have consistently held [the commerce clause] to contain a further, negative command, known as the dormant Commerce Clause, prohibiting certain state taxation even when Congress has failed to legislate on the subject." *Oklahoma Tax Comm'n* v. *Jefferson Lines, Inc.*, 514 U.S. 175, 179 (1995). A State tax will be upheld "against [a] Commerce Clause challenge when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274, 279 (1977). *Brady* focuses on the practical effect on interstate commerce of a challenged tax statute, not the specific language used in the statute. *Id. Brady* achieves its goal of focusing on the effect of the tax by way of its four-prong test.

The first prong is self-explanatory. The tax must be applied to an activity with a substantial nexus with the taxing State. The business must have some constitutionally sufficient degree of contact with the taxing State before the State can impose any tax on it.

The next prong, apportionment, is designed to "ensure that each State taxes only its fair share of an interstate transaction." *Goldberg* v. *Sweet*, 488 U.S. 252, 261 (1989). Apportionment also seeks to avoid multiple taxation by different States. *Oklahoma Tax Comm'n, supra* at 184. "[W]e determine whether

a tax is fairly apportioned by examining whether it is internally and externally consistent." *Goldberg, supra* at 261, citing *American Trucking Ass'ns* v. *Scheiner,* 483 U.S. 266, 285 (1987). A tax is internally consistent if it is "structured so that if every State were to impose an identical tax, no multiple taxation would result." *Goldberg, supra.* External consistency exists where "the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Id.* at 262, citing *Container Corp. of Am.* v. *Franchise Tax Bd.,* 463 U.S. 159, 169-170 (1983).

The third prong, that the tax cannot discriminate against interstate commerce, prevents States from aiding local business in competition with foreign businesses. *Oklahoma Tax Comm'n, supra* at 197.

The final prong requires that there be a fair relation between the tax imposed and the services provided by the State. The test here is closely related to the requirement of "nexus." While "nexus" demands some constitutionally sufficient degree of contact with the taxing State before any tax can be imposed, fair relation requires that the degree of contact justifies the degree of the specific tax imposed. *Commonwealth Edison Co.* v. *Montana,* 453 U.S. 609, 626 (1981). The requirement that there be a fair relation does not require that the tax be compensatory in nature, merely reimbursing the State for its cost incurred supporting the activity. It is an "incorrect assumption that the amount of state taxes that may be levied on an activity connected to interstate commerce is limited to the costs incurred by the State on account of that activity. . . . [I]nterstate commerce may be required to contribute to the cost of providing *all* governmental services, including those services from which it arguably receives no direct 'benefit' " (emphasis in original). *Commonwealth Edison Co., supra* at 627 n.16. The Court also rejected the assertion that it is the role of the judiciary to undertake a "factual inquiry" to decide whether the tax imposed is excessive in relation to the costs incurred by the taxing State. "The simple fact is that the appropriate level or rate of taxation is essentially a matter for legislative, and not judicial, resolution." *Id.* at 627, and cases cited. It is only when "the measure of a tax bears no relationship to the taxpayers' presence or activities in a State, [that] a court may properly conclude under the fourth prong of the *Complete Auto Transit* test that

the State is imposing an undue burden on interstate commerce."
*Id.* at 629, and cases cited.

4. *Discussion.* A decision of the board will not be disturbed
"unless it is not supported by substantial evidence or is based
on an error of law." *M & T Charters, Inc.* v. *Commissioner of
Revenue,* 404 Mass. 137, 140 (1989), and cases cited. Aloha as-
serts that the decision of the board fails on both counts. It
claims that the board's finding of nexus, which subjects Aloha
to G. L. c. 63, § 39, is not supported by substantial evidence,
and that the board's finding that G. L. c. 63, § 39, does not
violate the commerce clause constitutes an error of law. We
consider Aloha's claims against the standard that tax measures
are presumed constitutionally valid and the burden of proving
the measure invalid rests with the party challenging it. *Andover
Sav. Bank* v. *Commissioner of Revenue,* 387 Mass. 229, 235
(1982).

a. *Nexus.* We are not persuaded by Aloha's first argument,
that during 1986 Aloha's contacts with Massachusetts were
insufficient to establish "nexus." The nexus requirement seeks
to prevent overreaching by States, and limits a State's ability to
tax businesses operating within interstate commerce which lack
a sufficient connection to the taxing State. Aloha's business
consists of picking up, transporting, and delivering freight
throughout the United States. During 1986, Aloha performed
each of these business functions within the Commonwealth on a
regular basis: Aloha's trucks made fifty-four trips to Mas-
sachusetts; serviced customers in thirty-two separate Mas-
sachusetts cities and towns; and logged 10,926 miles on Mas-
sachusetts roads. Aloha clearly had sufficient contact with
Massachusetts, in 1986, to establish "nexus," and justify the
imposition of the $228 corporate minimum excise.[4]

b. *Fair relation.* Aloha next argues that there was no showing
that the minimum corporate excise is fairly related to the
services provided by the Commonwealth, and as a result the
excise fails the fourth prong of the *Brady* case. Aloha argues
that it has already paid for any services it receives from the
Commonwealth by payment of the registration and licensing

---

[4]Under Aloha's argument, the only State an interstate carrier could be found
to have "nexus" with would be one in which it maintains a base of opera-
tions. The requirement of "nexus" does not provide such tax immunity to
interstate carriers. See *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274,
279 (1977).

fees, and the fuel taxes. Aloha states that these payments covered its use of the highways and services directly related to interstate trucking. In focusing solely on those services of which it directly avails itself, Aloha misconstrues the United States Supreme Court's pronouncement in *Goldberg, supra.* "The tax which may be imposed on a particular interstate transaction need not be limited to the cost of the services incurred by the State on account of that particular activity." *Id.* at 267, citing *Commonwealth Edison Co.* v. *Montana,* 453 U.S. 609, 627 n.16 (1981). Consequently, the focus is not on what specific services are utilized by the taxpayers in its day-to-day operations, but rather, "the wide range of benefits" made available to them. *Goldberg, supra.*

The board found that the $228 minimum corporate excise was reasonable in light of the wide range of government services available for Aloha's use — police, fire, access to the courts, and road maintenance. The board made factual findings as to the activities of Aloha and the corresponding State services and protections made available to it. "The decision of the board shall be final as to findings of fact." G. L. c. 58A, § 13. We find that the minimum corporate excise was fairly related to the wide range of governmental services available to Aloha as a corporation conducting its business in the Commonwealth.

Aloha argues that the excise is "flat," and therefore invalid, because it would apply to any motor carrier who drove so little as one mile into Massachusetts. The Commonwealth argues that the excise is reasonable because the commissioner has instituted an exclusion for de minimis contact. The commissioner has the power, under G. L. c. 14, § 6 (1), to "make . . . and from time to time . . . revise . . . such reasonable regulations . . . as may be necessary to interpret any statute imposing any tax, excise or fee."

General Laws c. 62C, § 3, states, in pertinent part:

> "The Commissioner may prescribe regulations and rulings, not inconsistent with law, to carry into effect the provisions of said statutes, which regulations and rulings, when reasonably designed to carry out the intent and purpose of said provisions, shall be prima facie evidence of their proper interpretation."

Unless the regulation provides otherwise, it is retroactive in ef-

fect. Pursuant to this authority the department promulgated 830 Code Mass. Regs. § 63.39.1(1)(a) (1993) to "describe[] the circumstances under which a foreign corporation is subject to the tax jurisdiction of Massachusetts under [G. L.] c. 63, § 39." Title 830 Code Mass. Regs. § 63.39.1(10) (1993) states that trucks that "frequently transport goods over the roads of Massachusetts" have a substantial nexus for imposition of the corporate excise.[5] To elaborate on what was meant by "frequent" the department issued DD 95-7, 3 Official MassTax Guide 504-506 (West 1998). This directive established a de minimis exception under which a foreign corporation is only subject to the corporate excise if it "makes more than twelve pickups, deliveries, trips through Massachusetts without pickup or delivery, or any combination thereof totaling more than twelve."

c. *Apportionment.* Aloha next argues that the corporate excise is invalid because it fails the second *Brady* prong, that the tax be fairly apportioned. We analyze this claim mindful "that the central purpose behind the apportionment requirement is to ensure that each State taxes only its fair share of an interstate transaction." *Goldberg, supra* at 260-261. When a tax is fairly apportioned, the danger of overlapping taxation of business activity with a tax situs in multiple States is alleviated.

In making this argument Aloha relies on *American Trucking Ass'ns* v. *Scheiner*, 483 U.S. 266 (1987), and our holding in *American Trucking Ass'ns* v. *Secretary of Admin.*, 415 Mass. 337 (1993). In *Scheiner*, the United States Supreme Court held that two Pennsylvania statutes that imposed annual lump-sum taxes on every truck traveling on Pennsylvania highways violated the commerce clause.[6] The Court found that, while all trucks operating on the State's highways would pay the same

---

[5]The quoted language comes from an illustrative example contained within the regulations which provides as follows: "Diffuse Deliveries, Inc. (Diffuse) is a foreign corporation engaged in interstate trucking. Diffuse's trucks frequently transport goods over the roads of Massachusetts, and may or may not pick up or deliver goods in the Commonwealth. Diffuse is subject to the Massachusetts corporate excise because it uses corporate property (trucks) and provides a service (transportation) in Massachusetts and because its activities are not solicitation of orders for the sale of tangible personal property." 830 Code Mass. Regs. § 63.39.1(10) example 4 (1993).

[6]One imposed a flat annual fee of $25 for an identification marker that had to be affixed on every truck over a certain weight operating on Pennsylvania's highways, regardless of where it was registered. The other involved an annual

fees, local truckers would derive a greater benefit in return because they would make greater use of the roads. *Scheiner, supra* at 296. Because the fees, in effect, imposed a greater cost per mile on interstate trucks than on local trucks they were found to discriminate against interstate commerce. The Court also concluded that the fees failed the "internal consistency" test of *Armco Inc.* v. *Hardesty*, 467 U.S. 638, 644 (1984). *Scheiner, supra* at 284. "To pass the 'internal consistency' test, a state tax must be of a kind that, 'if applied by every jurisdiction, there would be no impermissible interference with free trade.' " *Id.*, citing *Armco, supra.* The Court found that interstate commerce would suffer if every State imposed such a tax because the taxes imposed a greater economic burden on out-of-State truckers than on local truckers.

In *American Trucking Ass'n, supra*, we discussed *Scheiner, supra*, at some length. We determined that the fees in question, in that case, failed the internal consistency test. In doing so we noted the "discriminatory impact" of the challenged flat annual fees at issue. *American Trucking Ass'ns, supra* at 345-346. Specifically, we found objectionable that application of the fees was triggered by a single entry of even one mile into Massachusetts. *Id.* at 345, 347, 348. We also stated that, in the context of user fees, a fee is internally consistent where "the taxing States' borders are essentially irrelevant to the measure of the tax imposed and the fees [are] not excessive in relation to the benefits received for their payment." *Id.* at 348. Because the fees in *American Trucking Ass'ns* discriminated against out-of-State trucking and did not fairly approximate the value of any benefit conferred in Massachusetts, they failed the internal consistency test. *Id.* at 348-349.

The excise presently before us, G. L. c. 63, § 39, does not implicate the concerns about discrimination that were central to the reasoning of both the *Scheiner* and *American Trucking Ass'ns* cases. The Court in *Scheiner* noted that the challenged fees were discriminatory in effect because they were assessed with no consideration given to the frequency or duration of the interstate carriers' travels over the Pennsylvania highways. *Scheiner, supra* at 286. Similarly, in *American Trucking Ass'ns, su-*

---

axle tax of $36 that also applied to every truck operating on the State's highways, regardless of where it was registered. *American Trucking Ass'ns* v. *Scheiner*, 483 U.S. 266, 274 (1987).

*pra* at 345, we observed that "the imposition of the full measure of each [of the challenged fees] is triggered by an interstate truck simply crossing the border of Massachusetts and making just one commercial entry into the state." Consequently, we held that "[t]he fees here discriminate against out-of-State truckers by subjecting them to a higher charge per mile traveled in Massachusetts . . . ." *Id.* at 348. The Massachusetts foreign corporate excise, by contrast, exempts from its application those carriers with only de minimis contact with the Commonwealth.

Nor does Aloha, as an out-of-State company, pay more for its Massachusetts-related business than it would were it an in-State company. During the tax year in question, Aloha traveled to Massachusetts on fifty-four occasions. The company logged over 10,000 miles on the roads of the Commonwealth, making pickups and deliveries in thirty-two separate communities. Under the Massachusetts excise scheme, Aloha was assessed a minimum excise of $228 for the privilege of conducting this business within the Commonwealth. A local trucking company engaged in the same level of business would likely face a higher total excise burden under the Massachusetts excise scheme because they would have a greater over-all presence in the State. General Laws c. 63, § 32, establishes the excise imposed on domestic corporations. Section 32 is almost identical in its language to § 39. Under either § 32 or § 39 the excise imposed is the *greater* of the minimum excise under § 32 (*b*) or § 39 (*b*); or a combination of income tax and property tax amounts as set forth § 32 (*a*) and § 39 (*a*). While the record does not provide sufficient data to compute the excise Aloha would pay if it was a "local" business, a local company's property and income would be subject to the excise scheme, § 32 (*a*), likely resulting in an excise greater than the statutory minimum.

The excise also satisfies the "external consistency" test. External consistency ensures that each State taxes only that portion of the interstate transaction that is attributable to the local activity. During 1986 Aloha generated more than $55,000 in revenue from its pickups and deliveries in the Commonwealth. The record does not disclose what percentage of this revenue is directly attributable to activity conducted within Massachusetts. However, an excise of $228 was reasonable given the level of in-State activity conducted by Aloha. We hold that the Commonwealth has taxed only "that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Goldberg, supra* at 262.

d. *Discrimination against interstate commerce.* Aloha's final argument is that G. L. c. 63, § 39, discriminates against interstate commerce. In support of this assertion Aloha asserts that it is "obvious" that local truckers make greater use of the Commonwealth's roads and services than do interstate carriers. Aloha goes on to state that a trucker who travels only one mile on the highways of the Commonwealth will pay a disproportionately higher excise tax than intrastate truckers. We note as a preliminary matter that Aloha is clearly not this hypothetical company. Regardless, a company making fewer than twelve trips into the Commonwealth is exempted from the excise tax by the department's de minimis exclusion. As to the broader question of discrimination, we do not find that the Massachusetts excise scheme in any way aids local business or inhibits foreign companies operating within the Commonwealth.

The decision of the Appellate Tax Board is affirmed.

*So ordered.*