NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11873


   REGENCY TRANSPORTATION, INC.  vs.  COMMISSIONER OF REVENUE.



       Suffolk.     November 5, 2015. - January 6, 2016.

   Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
                         Hines, JJ.



Taxation, Sales and use tax, Abatement.  Constitutional Law,
     Taxation, Commerce clause, Interstate commerce.  Interstate
     Commerce.



     Appeal from a decision of the Appellate Tax Board.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Matthew A. Morris (Richard L. Jones with him) for the
taxpayer.
     Marikae G. Toye (Joseph J. Tierney with her) for the
Commissioner of Revenue.
     Elizabeth J. Atkinson, of Virginia, & Andrew J. Fay &
Patrick E. McDonough, for Massachusetts Motor Transportation
Association & others, amici curiae, submitted a brief.


     CORDY, J.  Regency Transportation, Inc. (Regency), appeals

from a decision of the Appellate Tax Board affirming in part the

denial of an abatement of the motor vehicle use tax assessed

against it under G. L. c. 64I, § 2.  We granted Regency's application for direct appellate review to decide whether an unapportioned use tax imposed on Regency's interstate fleet of vehicles violates the commerce clause of the United States Constitution. For the reasons discussed herein, we conclude it does not.[1]

1. Background.  The essential facts are not disputed. Regency is a Massachusetts S corporation that operates a freight business with terminals in Massachusetts and New Jersey. Regency is licensed by the Interstate Commerce Commission as an interstate carrier to operate a fleet of tractors and trailers. The Regency fleet carries and delivers goods throughout the eastern United States.

Throughout the tax periods at issue, Regency maintained its corporate headquarters in Massachusetts, as well as four warehouses and a combined maintenance facility and terminal location which it used for repairing and storing vehicles in its fleet.  Regency also operated five warehouses in New Jersey and two combined maintenance facility and terminal locations there. Regency performed thirty-five per cent of the maintenance and repair work on its fleet at its Massachusetts locations and thirty-five per cent of the work at its New Jersey locations,

---

[1] We acknowledge the amicus brief filed by the Massachusetts Motor Transportation Association and other State transportation associations.

with the remainder being performed by third parties.  All vehicles in the Regency fleet entered into Massachusetts at some point during the tax periods at issue, and during these same periods Regency employed between sixty-three and eighty-three per cent of its workforce in the Commonwealth.

Regency purchased the vehicles in its fleet from vendors in New Hampshire, New Jersey, Indiana, and Pennsylvania and accepted delivery and possession outside the Commonwealth.  The vehicles were registered in New Jersey and bore New Jersey registration plates.  Regency did not pay sales or use tax to any jurisdiction on its purchases of the vehicles because New Hampshire does not impose a sales tax and the remaining States provide an exemption for vehicles engaged in interstate commerce, known as a "rolling stock exemption."  The majority of States provides such an exemption from sales and use tax; Massachusetts does not, having abolished its rolling stock exemption in 1996.

In August, 2010, the Commissioner of Revenue (commissioner) issued a notice of assessment to Regency pursuant to an audit of its sales and use tax liabilities for the monthly tax periods beginning October 1, 2002, and ending January 31, 2008.  The commissioner imposed a use tax on the full purchase price of each tractor and trailer in Regency's fleet, totaling $1,472,258.22, including $298,286.61 in interest and $391,323.95

in penalties for failure to file use tax returns and failure to pay use tax. Regency requested full abatement of the assessment, which the commissioner denied in November, 2010. Regency timely appealed to the Appellate Tax Board (board) in January, 2011.

In its appeal, Regency argued that the Commonwealth's imposition of a use tax on vehicles engaged in interstate commerce violated the commerce clause of the United States Constitution and the equal protection clauses of the United States and Massachusetts Constitutions. Regency also argued that its reliance on a "letter ruling" issued by the Department of Revenue (department) under prior law constituted reasonable cause for the commissioner to abate the penalties assessed for failure to file returns and pay the tax.

The board rejected Regency's arguments as to the commerce and equal protection clauses and concluded that Regency was liable for the Massachusetts use tax on the full sales price of its vehicles that were either stored or used in the Commonwealth. It ruled that the tax was permissible under the commerce clause and administered in a manner consistent with the equal protection clauses of the United States and Massachusetts Constitutions. The board noted that "while the fact that Massachusetts imposes a use tax on the use of interstate vehicles in the Commonwealth when many [S]tates do not may

increase costs for taxpayers who use vehicles here, this difference is not unconstitutional discrimination because Massachusetts allows a credit for any taxes paid to other jurisdictions."

The board, however, abated the penalties imposed after finding that the commissioner's continued publication of incorrect guidance created uncertainty constituting reasonable cause for Regency's failure to file use tax returns and pay use tax. Regency timely appealed the board's decision, and petitioned this court for direct appellate review, which we granted. On appeal to this court, Regency challenges only the board's determination that the motor vehicle use tax does not violate the commerce clause.

2. General Laws c. 64I, § 2. General Laws c. 64I, § 2, imposes a tax on the "storage, use or other consumption in the commonwealth of tangible personal property." "The use tax was designed to prevent the loss of sales tax revenue from out-of-State purchases." M & T Charters, Inc. v. Commissioner of Revenue, 404 Mass. 137, 140 (1989). The use tax and the sales tax "are complementary components of our tax system, created to reach all transactions, except those expressly exempted, in which tangible personal property is sold inside or outside the Commonwealth for storage, use, or other consumption within the Commonwealth" (quotation and citation omitted). Town Fair Tire

Ctrs., Inc. v. Commissioner of Revenue, 454 Mass. 601, 605 (2009). They are mutually exclusive and the tax rate is identical. See G. L. c. 64H, § 2; G. L. c. 64I, § 2.

The statute creates a rebuttable presumption that property brought into the Commonwealth by the purchaser within six months of purchase was purchased for storage, use, or other consumption in Massachusetts. G. L. c. 64I, § 8 (f). See 830 Code Mass. Regs. § 64H.25.1(3)(c)(2) (1993). The use tax imposed under c. 64I applies to transfers of title or possession of a motor vehicle where the vehicle transferred is thereafter stored, used, or otherwise consumed in Massachusetts. 830 Code Mass. Regs. § 64H.25.1(3)(a) (1993).

A purchaser may be exempt from the use tax if it has paid a comparable use or sales tax in another jurisdiction, and, if the tax paid is less than the corresponding Massachusetts tax, the purchaser may offset its Massachusetts tax liability by any amount previously paid to the other jurisdiction. G. L. c. 64I, § 7 (c) (§ 7 [c] exemption).[2] As amplified in the department's

---

[2] General Laws c. 64I, § 7 (c), exempts from the use tax "[s]ales upon which the purchaser has paid a tax or made reimbursement therefor to a vendor or retailer under the laws of any [S]tate or territory of the United States, provided that such tax was legally due without any right to a refund or credit thereof and that such other [S]tate or territory allows a corresponding exemption with respect to the sale or use of tangible personal property or services upon which such a sales or use tax was paid to this [S]tate. To the extent that the tax imposed by this chapter is at a higher rate than the rate of tax

regulations, a § 7 (c) exemption exists for the sale or transfer of a vehicle that is subsequently brought to or used in Massachusetts if (1) "the purchaser or the transferee [has paid] a sales or use tax on the vehicle to the [S]tate or territory in which the sale or transfer occurred"; (2) "the sales or use tax [has been paid] by the purchaser or the transferee and [was] legally due the State or territory"; (3) "the purchaser or the transferee [has not received and does not] have a right to receive a refund or credit of the sales or use tax from the [S]tate or territory in which the sale or transfer occurred"; and (4) "the [S]tate or territory to which the sales or use tax was paid [allows] a corresponding exemption with respect to motor vehicle sales and use taxes paid to Massachusetts."  830 Code Mass. Regs. § 64H.25.1(7)(g) (1996).  The department regulations further provide that sales or transfers are exempt from the imposition of a sales or use tax if their taxation is impermissible under the Constitution or laws of the United States.  830 Code Mass. Regs. § 64H.25.1(7)(h) (1996).

Regency does not dispute that it used and stored its tractors and trailers in Massachusetts during the tax periods at issue, nor does it dispute that it did not pay sales or use tax to any other State on the purchase of the vehicles.  The § 7 (c)

_____

in the first taxing jurisdiction, this exemption shall be inapplicable and the tax imposed by this chapter shall apply to the extent of the difference in such rates."

exemption delineated in 830 Code Mass. Regs. § 64H.25.1(7)(g) therefore does not apply. Consequently, we focus our inquiry on whether the use tax is otherwise impermissible under the United States Constitution, as Regency contends.

3. Commerce clause. The Commonwealth's taxing powers are limited by the commerce clause's broad grant of authority to the Federal government to "regulate commerce with foreign nations and among the several [S]tates." Art. 1, § 8, of the United States Constitution. The United States Supreme Court has interpreted the clause to comprehend a negative, or dormant, command that prevents the States from unduly burdening interstate commerce, even where Congress has not otherwise acted. See D.H. Holmes Co. v. McNamara, 486 U.S. 24, 29-30 (1988). "The dormant commerce clause seeks to prevent economic 'Balkanization,' . . . and to protect an area of free trade among the several States" (quotations and citation omitted). DIRECTV, LLC v. Department of Revenue, 470 Mass. 647, 653, cert. denied, 136 S. Ct. 401 (2015). The dormant commerce clause is implicated where, as here, a State imposes a tax that touches on interstate commerce. Aloha Freightways, Inc. v. Commissioner of Revenue, 428 Mass. 418, 421 (1998).

Our review of commerce clause challenges to State taxes focuses on "the practical effect of a challenged tax" (citation omitted). Commonwealth Edison Co. v. Montana, 453 U.S. 609, 615

(1981). Interstate commerce does not enjoy a "'free trade' immunity from State taxation," George S. Carrington Co. v. State Tax Comm'n, 375 Mass. 549, 551-552 (1978), but rather "may be made to pay its way" within the bounds of the commerce clause. Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 281 (1977) (Complete Auto). A State tax will be sustained under the commerce clause if it meets the test articulated by the Supreme Court in Complete Auto, supra at 279, which requires that the tax "[1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State" (Complete Auto test).

4. Discussion. In reviewing the board's final decision, we affirm findings of fact by the board that are supported by substantial evidence. M & T Charters, Inc., 404 Mass. at 140. "We review conclusions of law, including questions of statutory construction, de novo." New England Forestry Found., Inc. v. Assessors of Hawley, 468 Mass. 138, 149 (2014), citing Bridgewater State Univ. Found. v. Assessors of Bridgewater, 463 Mass. 154, 156 (2012).

Because the parties agree that Regency's activities in Massachusetts constitute a "substantial nexus" with the

Commonwealth, we begin our analysis with the second prong of the Complete Auto test.

a. Fair apportionment. The fair apportionment requirement of the Complete Auto test ensures "that each State taxes only its fair share of an interstate transaction." Goldberg v. Sweet, 488 U.S. 259, 260-261 (1989). "Apportionment also seeks to avoid multiple taxation by different States." Aloha Freightways, Inc., 428 Mass. at 421.

There is no set formula for determining whether a tax is fairly apportioned; rather, we examine whether the tax is both internally and externally consistent. Aloha Freightways, Inc., 428 Mass. at 422, quoting Goldberg, 488 U.S. at 261.

i. Internal consistency.[3] A tax is internally consistent if it is "structured so that if every State were to impose an

_____

[3] The parties disagree about whether we may reach the issue of internal consistency on appeal. In the proceedings below, Regency Transportation, Inc. (Regency), acknowledged that the tax is internally consistent. On appeal, however, it takes the opposite position, and further argues that it may challenge the statute as internally inconsistent in spite of its concession below because "the issue of law presented on appeal is whether the use tax is fairly apportioned [and] not the precise means . . . by which this Court could conclude that the use tax is not fairly apportioned," i.e., whether it meets both prongs of the fair apportionment test. The Commissioner of Revenue (commissioner) is of the view that Regency's concession effectively waived the argument, barring its revival on appeal. See G. L. c. 58A, § 13 ("The court shall not consider any issue of law which does not appear to have been raised in the proceedings before the [Appellate Tax Board (board)]"); Minchin v. Commissioner of Revenue, 393 Mass. 1004, 1005 (1984) ("[t]o raise a constitutional question on appeal to this court from the

identical tax, no multiple taxation would result."  Aloha Freightways, Inc., supra, quoting Goldberg, supra.

In Regency's view, the § 7 (c) exemption is rendered unconstitutional by the language in 830 Code Mass. Regs. § 64H.25.1(7)(g)(1)(a), which exempts from liability a taxpayer who has paid taxes "to the [S]tate or territory in which the sale or transfer occurred."  Regency believes that this language limits the exemption such that it is not available where a sales or use tax was paid to a State where sale or transfer did not occur, potentially subjecting purchasers to multiple taxation. To illustrate this possibility, Regency proposes a hypothetical situation whereby an interstate carrier purchases a tractor in New Hampshire (which has no sales tax) and drives the tractor to New Jersey, where it is registered.  The carrier pays no sales or use tax in New Jersey because the State provides a rolling stock exemption.  The carrier then drives the tractor to

_____

board, the taxpayer must present the question to the board and, in so doing, make a proper record for appeal.  Otherwise, the taxpayer waives the right to press the constitutional argument." We have not had occasion to decide whether an appellant may raise an argument in support of its constitutional claim on appeal where it raised the claim below but then conceded the argument.  For the purposes of this appeal, we assume without deciding that Regency waived its internal consistency argument by conceding the matter below.  We nevertheless reach the issue because the matter has been fully briefed on the merits, there is a public interest in promptly resolving the issue, and the answer to be given is reasonably clear and dependent on issues of general application and not on factual determinations specific to the case at hand.  See Brown v. Guerrier, 390 Mass. 631, 632-633 (1983).

Vermont, which provides no rolling stock exemption, and is assessed the Vermont use tax. The carrier then drives the truck to Massachusetts, where it is assessed the Massachusetts use tax. According to Regency, Massachusetts will not credit the Vermont use tax paid because the tax was not paid "to the State or territory in which the sale or transfer occurred" per the language of § 64H.25.1(7)(g). The result, Regency asserts, is that the carrier is assessed the use tax twice because the language precludes its eligibility for the exemption and renders the scheme internally inconsistent.

We do not agree with Regency's interpretive legerdemain, which ignores the "catch-all" exemption provided by 830 Code Mass. Regs. § 64H.25.1(7)(h), which exempts a taxpayer from Massachusetts' use tax liability, beyond the exemptions set forth in § 64H.25.1(7)(g):

> "if the use of the vehicle in Massachusetts as part of interstate commerce is exempt from use tax under the Constitution or laws of the United States. For the purposes of this subsection, the use of such a vehicle in Massachusetts as part of interstate commerce is exempt from Massachusetts use tax under the Constitution or laws of the United States only if application of the use tax violates the test applied by the United States Supreme Court in [Complete Auto]."

The commissioner responds to this hypothetical by explaining that, because the hypothetical imposition of the use tax would violate the Complete Auto test due to its potential for multiple taxation, it is, by its terms, otherwise exempted

under § 64H.25.1(7)(h). Consequently, Massachusetts would either not impose a use tax, or if the Vermont tax rate was lower than the Massachusetts tax rate, Massachusetts would credit the amount of the tax paid to Vermont. We agree with the commissioner's reading of the regulations. See Biogen IDEC MA, Inc. v. Treasurer & Receiver Gen., 454 Mass. 174, 187 (2009) ("We accord substantial deference to the agency's regulations and apply all rational presumptions in favor of the validity of the administrative action and [do] not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate"). Because any potential for multiple taxation under § 64H.25.1(7)(g) is averted by the language of § 64H.25.1(7)(h), with respect to use taxes paid to another jurisdiction, we conclude that the use tax is internally consistent. See, e.g., M & T Charters, Inc., 404 Mass. at 143. This conclusion is dependent upon the commissioner's interpretation of the department's regulations as presented to the court.

ii. External consistency. We turn next to the question of whether the use tax is externally consistent. This inquiry is satisfied where "the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." Aloha Freightways, Inc., 428 Mass. at 422, quoting Goldberg, 488 U.S.

at 262.  To make this determination, we examine the "in-state business activity which triggers the taxable event and the practical or economic effect of the tax on that interstate activity."  Goldberg, supra.  Here, the in-State activity at issue is the "storage, use or other consumption in the commonwealth of tangible personal property."  G. L. c. 64I, § 2.  There are ample facts to support the board's finding that Regency's tax liability reasonably reflects the in-State activity being taxed.  Regency has used all of the tractors and trailers in its fleet in Massachusetts, and stores and maintains its fleet, at least in part, in the Commonwealth.

Nevertheless, Regency contends that the tax is externally inconsistent because the tax base on the property engaged in interstate commerce (tractors and trailers) is not apportioned reasonably to reflect the in-State activity being taxed, which it says is its use of Commonwealth's roads.[4]  We disagree with this characterization, as G. L. c. 64I, § 2, is not so limited

---

[4] For this proposition, Regency cites a decision from the Alabama Court of Appeals, Boyd Brothers Transp., Inc. v. State Dep't of Revenue, 976 So. 2d 471, 482 (Ala. App. 2007), which struck down an unapportioned use tax on the value of trucks used in interstate commerce as violating the commerce clause.  We are not bound by this decision, but note that the court failed to consider the issue of credit provisions in lieu of apportionment, and deviated from a decision of its own supreme court, which upheld a use tax where a credit was available to prevent multiple taxation.  See Ex parte Fleming Foods of Ala., Inc., 648 So. 2d 577, 579-580 (Ala. 1994).  Accordingly, Boyd Brothers Transp., Inc., is irrelevant to our analysis.

in its scope and application. The statute, by its terms, applies to use, storage, or consumption, and Regency's activities in the Commonwealth are not limited only to its use of the Commonwealth's roads.

Moreover, the Supreme Court has, in considering a challenge to a sales tax, rejected the argument that a tax must be apportioned to satisfy the external consistency requirement, stating that it has "consistently approved taxation of sales without any division of the tax base among different States, and [has] instead held such taxes properly measurable by the gross charge for the purchase, regardless of any activity outside the taxing jurisdiction that might have preceded the sale or might occur in the future." Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 186 (1995) (Jefferson Lines, Inc.). The taxpayer in that case argued that Oklahoma should be limited to imposing sales tax only on an apportioned value of a bus ticket that represented the miles of the journey traversed in Oklahoma. Id. at 191-192.

The court rejected the argument that the tax must be apportioned based on mileage simply because it was possible to do so where the taxpayer had otherwise failed to demonstrate that the unapportioned tax was grossly out of proportion to taxed activity transacted in Oklahoma. Id. at 195-196. The Court explained that there was "no reason to leave the line of

longstanding precedent and lose the simplicity of our general rule sustaining sales taxes measured by full value." Id. at 196. It concluded that the Oklahoma tax was therefore externally consistent, "reaching only the activity taking place within the taxing State, that is, the sale of the service." Id.

Similarly, the motor vehicle use tax need not be apportioned, so long as we can discern the "economic justification for the State's claim" and determine that the use tax does not "reach[] beyond that portion of value that is fairly attributable to economic activity within the taxing State." Id. at 185. The use tax is intended to "to prevent the loss of sales tax revenue from out-of-State purchases." Commissioner of Revenue v. J.C. Penney Co., 431 Mass. 684, 687 (2000), quoting M & T Charters, Inc., 404 Mass. at 140. Given this intent, the tax is properly measurable by the sale value of a vehicle that is subsequently brought to the Commonwealth for storage, use, or other consumption. Here, the use tax imposed on Regency is reasonably related to the in-State activity being taxed, which includes a great deal more than the mere use of its roads, and Regency is not subject to the imposition of multiple use or sales taxes in other jurisdictions. Accordingly, the tax is externally consistent. Because both internal and external consistency requirements are met, we hold that the use tax is

fairly apportioned in keeping with the requirements of the commerce clause.

b. Discrimination against interstate commerce. The third prong of the Complete Auto test examines whether a tax discriminates against interstate commerce. Although the use tax is imposed at the same rate as the sales tax and is levied on residents and nonresidents alike, see G. L. c. 64I, § 2, Regency argues that the use tax is nevertheless discriminatory because the tax, when divided by the miles actually driven by Regency vehicles in Massachusetts, is significantly greater for Regency than for intrastate companies. As a result, Regency says, the Massachusetts use tax places it at a competitive disadvantage as compared to companies doing business in States that impose no sales tax or provide rolling stock exemptions, and this disadvantage must be ascribed to the discriminatory nature of the use tax. See Comptroller of Treasury of Md. v. Wynne, 135 S. Ct. 1787, 1802 (2015). We disagree.

As an initial matter, Regency fails to articulate why we should assess the impact of the use tax based on the miles traveled by the Regency fleet within the Commonwealth. As noted earlier, the use tax is imposed in connection with Regency's use and storage of the fleet within the Commonwealth, and not solely based on its use of roads within the Commonwealth.

For this reason, Regency's reliance on the holdings in American Trucking Ass'ns, Inc. v. Scheiner, 483 U.S. 266 (1987), and American Trucking Ass'ns, Inc. v. Secretary of Admin., 415 Mass. 337 (1993), is misplaced.  In both cases, the courts found that flat, unapportioned user fees imposed on trucking companies for the use of State roads placed an impermissible burden on interstate trucking companies that were potentially required to pay similar fees in multiple jurisdictions, whereas their purely intrastate competitors would have only one fee to pay.  See American Trucking Ass'ns, Inc., 483 U.S. at 284-285; American Trucking Ass'ns, Inc., 415 Mass. at 345.  Regency believes that the use tax similarly discriminates against interstate commerce because, when broken down by cost per mile, the result is that Regency bears a heavier burden than other interstate carriers not subject to the Massachusetts use tax and intrastate carriers traveling only in Massachusetts, rendering the tax unconstitutional.

This argument misconstrues the courts' decisions in the American Trucking Ass'ns cases.  First, the fees in both cases were flat fees imposed solely for the use of the roads.  See American Trucking Ass'ns, Inc., 483 U.S. at 273, 283-284; American Trucking Ass'ns, Inc., 415 Mass. at 339-340.  As we have emphasized throughout this decision, the use tax is not a tax on the use of the Commonwealth's roads, but rather on the

privilege of using and storing the tractors and trailers in the State.  Thus, "miles traveled within the State simply are not a relevant proxy for the benefit conferred upon the parties['] [use and storage]" of the fleet within Massachusetts.  Jefferson Lines, Inc., 514 U.S. at 199.

Second, in the American Trucking Ass'ns cases, the courts found that the flat fee was internally inconsistent in violation of the commerce clause because taxpayers were potentially subject to the same tax in multiple jurisdictions, which resulted in the additional cost per mile for interstate carriers.  See American Trucking Ass'ns, Inc., 483 U.S. at 284-285; American Trucking Ass'ns, Inc., 415 Mass. at 345-346.  As discussed supra, the use tax is internally consistent because of the exemptions provided in G. L. c. 64I, § 7 (c), and 830 Code Mass. Regs. § 64H.25.1(7)(g) and (h).  For these reasons, Regency's reliance on these cases is inapposite.

We also reject Regency's position that because Massachusetts chooses to tax an activity that other States do not, the tax is discriminatory.  Regency urges us to consider "not the formal language of the tax statute but rather its practical effect."  Comptroller of Treasury of Md., 135 S. Ct. at 1795, quoting Complete Auto, 430 U.S. at 279.  In doing so, we agree with the board, and not Regency, that "[d]iscrimination results when a [S]tate subjects taxpayers doing business outside

of the [S]tate to disparate tax treatment from those based inside the [S]tate, not when a [S]tate subjects all taxpayers to tax on a transaction that another [S]tate may exempt."  "The adverse economic impact in dollars and cents upon a participant in interstate commerce for crossing a [S]tate boundary and thus becoming subject to another State's taxing jurisdiction is neither necessary to establish a commerce clause violation . . . nor [is it] sufficient" (citations omitted).  American Trucking Assn's, Inc., 483 U.S. at 283, n.15.[5]  Regency "seeks to use the commerce clause of the United States Constitution not as protection against multiple or discriminatory taxation, but as an escape from any taxation at all.  This the Constitution does not permit."  M & T Charters, Inc., 404 Mass. at 143-44.

c.  Relation to State services.  The final prong of the Complete Auto test requires that the use tax be "fairly related" to the services provided by the State.  Regency again invokes its argument that because the use tax is not apportioned based on miles traveled in the Commonwealth, the measure of the use

---

[5] Nor do we agree with Regency's assertion that the statute and regulations give the commissioner unfettered authority to assess the use tax on all interstate tractors and trailers brought into the Commonwealth.  Such a result is contrary to the plain language of G. L. c. 64I, § 7, and 830 Code Mass. Regs. § 64H.25.1(7)(c), (g), and (h).  Not only may a party rebut the presumption that it is bringing a vehicle into the Commonwealth for storage, use, or other consumption, it is also exempted from the use tax where it has already paid a sales or use tax to another State and otherwise meets the statutory requirements for the exemption.

tax imposed cannot bear a reasonable relation to the services provided to it by the State. This argument fails, however, because the commerce clause does not require such an exacting measurement. The fair relation prong

> "requires no detailed accounting of the services provided to the taxpayer on account of the activity being taxed, nor, indeed, is a State limited to offsetting the public costs created by the taxed activity . . . [rather] Complete Auto's fourth criterion asks only that the measure of the tax be reasonably related to the taxpayer's presence or activities in the State."

Jefferson Lines, Inc., 514 U.S. at 199-200.

Thus, the tax need not relate directly to the interstate activity at issue, that is, driving the trucks; rather, the strictures of the commerce clause are satisfied where the taxpayer receives "police and fire protection, the use of public roads and mass transit, and the other advantages of civilized society." Goldberg, 488 U.S. at 267, citing D.H. Holmes Co., 486 U.S. at 32. See Towle v. Commissioner of Revenue, 397 Mass. 599, 606 (1986); George S. Carrington Co., 375 Mass. at 553-554 (1978). Regency is incorporated and headquartered in Massachusetts. The majority of its workforce is employed here. It also uses, stores, and maintains its vehicles in the Commonwealth. Given the nature and extent of Regency's activities in the Commonwealth, and the benefits it receives consonant with its presence here, we conclude the tax is fairly related to Regency's activities in the Commonwealth.

Conclusion.  Based on the foregoing analysis, we conclude that the motor vehicle use tax, G. L. c. 64I, § 2, meets the requirements of the Complete Auto test and therefore does not violate the commerce clause.  On account of Regency's use and storage of its trucking fleet in the Commonwealth, the Commonwealth may require Regency to "pay its way," and the Commonwealth's method of doing so is well within the bounds of the commerce clause.  Accordingly, we affirm the decision of the board.

So ordered.