# BAKER TRANSPORT, INC. *vs.* STATE TAX COMMISSION (and a companion case[1]).

Suffolk. November 4, 1976. — February 10, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Taxation,* Sales tax, Exemption, Lease. *Words,* "Sale."

Taxpayers who were engaged in providing transportation services by leasing trailers for the shipment of merchandise were not exempt from sales taxes for such rentals under G. L. c. 64H, § 3 (*c*), which operates only where there is a transaction involving the transfer or issuance of motor vehicle registration. [872-877]

APPEAL from a decision of the Appellate Tax Board.

*Samuel B. Bruskin* for the taxpayers.

*Howard Whitehead,* Assistant Attorney General, for the State Tax Commission.

LIACOS, J. The taxpayers appeal from a decision of the Appellate Tax Board (board) under G. L. c. 58A, § 13. The board upheld the State Tax Commission (commission) in its denials of applications for abatements of sales and use taxes assessed against the taxpayers in connection with the leasing of tractors and trailers for the period commencing April 1, 1966, and ending September 30, 1968.

The taxpayers were two Massachusetts corporations with usual places of business in the Commonwealth.[2] Baker is a licensed intrastate carrier, and Dedham was a wholly owned and operated subsidiary of Baker involved in the leasing of trailers to carriers engaged in commodity transportation. On or about August 27, 1959, each corporation

[1] Dedham Leasing Co., Inc. & another *vs.* State Tax Commission.

[2] On December 31, 1969, Dedham Leasing Co., Inc. (Dedham), was merged with its parent company, Baker Transport, Inc. (Baker), and all the assets of Dedham were transferred to Baker.

entered into a separate agreement with The Stop & Shop Companies, Inc. (Stop & Shop). Baker agreed to supply Stop & Shop with transportation services necessary for the shipment of merchandise from a central warehouse to its various stores located throughout Massachusetts. In the agreement Baker agreed to use only trailers leased from Dedham. Dedham, in turn, agreed to furnish Stop & Shop with all trailers necessary for the shipment of merchandise to various locations.[3]

For the period involved in these appeals, Baker and Dedham both filed required sales and use tax returns in which they reported no tax due. On October 16, 1968, the Commissioner of Corporations and Taxation (Commissioner) sent each taxpayer a notice of intention to assess a deficiency for sales and use taxes for the period in question. On February 5, 1969, Dedham was assessed sales taxes attributable to its trailer rentals to Baker and other carriers, while on March 10, 1969, Baker was assessed both sales and use taxes based on its tractor rentals to other carriers.[4]

On February 4, 1971, each taxpayer filed a proper application for abatement. These applications were denied by the Commissioner on May 7, 1971. A timely appeal was filed by each taxpayer with the board on July 30, 1971.

Before the board the taxpayers asserted three grounds for relief: (1) that they were engaged in a joint venture with Stop & Shop and Lidel, and, thus, were engaged in a service excluded from taxation under G. L. c. 64H, § 1 (13) (*b*); (2) that certain transfers not at issue here were a return of property exempt from taxation under G. L. c. 64H, § 1 (14) (*c*) (*ii*); and (3) that since the taxable transactions involved motor vehicle rentals the tax should be paid by the lessee pursuant to the terms of G. L. c. 64H, § 3 (*c*), as well as G. L. c. 64H, § 1 (12) (*a*), and (13). The

[3] There was a third agreement with Lidel Loading Co., Inc. (Lidel), which obligated that corporation to furnish stevedoring services. That agreement is not involved in the instant cases.

[4] Baker is not contesting the assessment of the use tax in the present cases.

taxpayers have not appealed from the board's adverse decisions on grounds (1) and (2). The only issue before us is whether the taxpayers' contention relative to the liability of the sales tax under G. L. c. 64H, § 3 (*c*), is correct. We conclude that it is not, and we affirm the decision of the board.

The original sales tax statute as enacted by St. 1966, c. 14, § 1, provided in subsection 3, that "each vendor . . . shall collect from the purchaser the full amount of the tax,"[5] and further provided in subsection 10, that "the vendor shall pay to the commissioner the taxes imposed by this section."[6] There is no question, as is conceded by the taxpayers, that this section clearly put the responsibility for tax payment on the vendor (lessor), in these cases Baker and Dedham.[7] However, St. 1966, c. 14, § 1 (now incorporated in G. L. c. 64H), was amended in subsection 3 by St. 1966, c. 483, § 1, which provided: "Notwithstanding the provisions of this subsection, the excise imposed by subsection two of this section . . . upon sales at retail . . . of motor vehicles or trailers shall be paid by the purchaser to

[5] "*Subsection 3.* Reimbursement for the tax hereby imposed shall be paid by the purchaser to the vendor and each vendor in this commonwealth shall add to the sales price and shall collect from the purchaser the full amount of the tax imposed by this section, or an amount equal as nearly as possible or practicable to the average equivalent thereof; and such tax shall be a debt from the purchaser to the vendor, when so added to the sales price, and shall be recoverable at law in the same manner as other debts."

[6] "*Subsection 10. Payment of Tax.* — At the time of filing his return as provided by this section, the vendor shall pay to the commissioner the taxes imposed by this section. The taxes for the period for which a return is required to be filed by a vendor under this section shall be due and payable to the commissioner on the date established for the filing of the return for such period, without regard to whether a return is filed or whether the return which is filed correctly shows the amount of gross receipts and taxes due thereon."

[7] The taxpayers originally contested the assessments for the entire period from April 1, 1966, through September 30, 1968. Since St. 1966, c. 14, § 1, subsection 3, was in effect until November 1, 1966, they concede in their reply brief that they are liable for the assessments from April 1, 1966, through November 5, 1966, but rely on St. 1966, c. 483, § 1 (effective November 1, 1966), as the basis of their claim for the balance of the period originally contested.

the registrar of motor vehicles."[8] The effect of this amendment was to create an exception to the general rule of vendor payment described in G. L. c. 64H, § 3 (*c*).

The taxpayers argue that since G. L. c. 64H, § 1 (13), inserted by St. 1967, c. 757, § 1, defines a "[s]ale at retail" to be a "sale of tangible personal property for any purpose other than resale," and since "sale" is further defined in G. L. c. 64H, § 1 (12) (*a*), to include a lease or rental, see *Zayre Leasing Corp.* v. *State Tax Comm'n*, 365 Mass. 351 (1974), and since G. L. c. 64H, § 1 (8), defines a "[p]urchaser" to include a lessee, the lease transactions in these cases are, for purposes of the statute, a sale at retail of a motor vehicle which triggers the provision of G. L. c. 64H, § 3 (*c*), and thus the tax liability is properly attributable to the lessees rather than to the taxpayers. The board, on the other hand, held that the exception was triggered only when there was either a transfer of registration or the issuance of a new certificate. While the taxpayer's argument has a beguiling simplicity, it does not withstand strict scrutiny in light of the obvious purpose of the Legislature in enacting the amendment and the abundant evidence in the statutory scheme which supports the board's position.

The legislative intent in creating the exception in § 3 (*c*) is not difficult to fathom. By making payment of the tax a condition precedent to the issuance or transfer of a certificate of registration, the Legislature was adopting what it believed to be the most efficacious method of ensuring the payment of taxes on all taxable sales of motor vehicles. In addition, it attempted to ensure that such

[8] Statute 1966, c. 14, § 1, subsection 3, as amended by St. 1966, c. 483, § 1: "Notwithstanding the provisions of this subsection, the excise imposed by subsection two of this section or by subsection two of section two upon sales at retail, or upon the storage, use or other consumption of motor vehicles or trailers shall be paid by the purchaser to the registrar of motor vehicles in the manner prescribed by the commissioner. The vendor thereof shall not add the tax to the sales price and shall not collect the tax from the purchaser. The vendor thereof shall, however, furnish to the purchaser, the registrar and the commissioner a sworn statement of the sale upon a form prescribed by the commissioner, with the approval of the commission, giving such information as the commissioner may require for the determination of such tax."

taxes would be paid by putting the original responsibility on the purchaser rather than on the vendor. It obviously believed that the normal pass-through theory which is built into the statute, *First Agricultural Nat'l Bank* v. *State Tax Comm'n,* 353 Mass. 172, 179-181 (1967), rev'd on other grounds, 392 U.S. 339 (1968), would not be adequate to ensure proper tax payments in a large number of situations where ownership of motor vehicles might be transferred.[9]

This perception of the legislative intent and purpose is bolstered by an examination of the entire statutory scheme. General Laws c. 64H, § 25, states that any change of motor vehicle registration shall be presumed to be a "sale at retail" invoking the sales tax liability, and makes evidence of tax payment a condition precedent to the issuance of a certificate of registration.[10] This statute makes clear that it is the transfer or acquisition of an ownership interest in a motor vehicle which was a key concern of the Legislature in devising the most efficient scheme for ensuring tax payments on such transactions.

In addition, G. L. c. 64H, § 10, requires that in the normal course of business sales taxes should be paid to the

---

9 If the taxpayers' interpretation was accepted it would encompass not only the instant fact situation but also the ordinary rental car transaction. It requires little imagination to realize the difficulty of attempting to collect the proper tax from each such lessee. We cannot attribute to the Legislature an intent both to facilitate and frustrate tax collections in the same statute. Cf. *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dep't of Community Affairs,* 363 Mass. 339, 355 (1973).

10 General Laws c. 64H, § 25, inserted by St. 1967, c. 757, § 1, states: "For the purposes of this chapter, every transfer of the registration of a motor vehicle or trailer, as defined in section one of chapter ninety, shall be presumed to be a sale at retail. Upon the return of the certificate of registration, as required by section two of said chapter ninety, the registrar of motor vehicles shall forthwith inform the commissioner of the date of transfer and the names and addresses of the former and new owners.

"No certificate of registration shall be issued by the registrar of motor vehicles to the new owner until such new owner shall furnish evidence, on such forms as shall be prescribed by the commissioner and the registrar of motor vehicles, that any tax due under the provisions of this chapter has been paid in accordance with regulations of the commission."

Commissioner, while § 3 (*c*) requires that the sales taxes should be paid to the Registrar of Motor Vehicles (Registrar). We note that when what is now § 3 (*c*) was originally offered as an amendment in 1966, the draft provided that the tax be paid to the Commissioner, 1966 House Doc. No. 3242, but the redraft provided for payment to the Registrar. 1966 House Doc. No. 3332.

Thus, the entire statutory scheme and legislative history of the section in question show that it was meant only to operate where there was a coincidence of time between the necessity of tax payment and some function involving the transfer or issuance of registration.[11] The instant cases clearly do not fall within the scope of these concerns.

Therefore, keeping in mind the proposition that an exception to the general rule is to be narrowly construed, *Commonwealth* v. *Yee*, 361 Mass. 533, 537 (1972), and that the interpretation of the administering agency is entitled to a certain degree of weight, *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 343 (1964), we hold, in accord with the board, that G. L. c. 64H, § 3 (*c*), operates only in those situations where there is such a transaction involving the transfer or issuance of motor vehicle registration.

The decision of the Appellate Tax Board is affirmed.

*So ordered.*

---

[11] We do not feel that the statutory definition of "sale" and "purchaser" contained in G. L. c. 64H, § 1, demands the result suggested by the taxpayers. First, G. L. c. 64H, § 1, inserted by St. 1967, c. 757, § 1, says that the definitions contained therein shall apply "unless the context indicates otherwise," a condition which our review of the statute and the legislative history clearly indicates is applicable. In addition, even without that proviso the duty of this court to ascertain and carry out the intent of the Legislature would demand the same result.