# RESCRIPT OPINIONS.

JOHN A. FEENEY & another[1] *vs.* DELL INC.[2] & others.[3] August 1, 2013. *Consumer Protection Act,* Class action, Arbitration. *Public Policy. Contract,* Arbitration. *Arbitration,* Waiver. *Federal Preemption. Practice, Civil,* Class action.

Following the United States Supreme Court's decision in *AT&T Mobility LLC* v. *Concepcion,* 131 S. Ct. 1740 (2011) (*Concepcion*), we held in *Feeney* v. *Dell Inc.,* 465 Mass. 470, 472 (2013) (*Feeney II*), that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq. (2006), does not foreclose a court "from invalidating an arbitration agreement that includes a class action waiver where a plaintiff can demonstrate that he or she effectively cannot pursue a claim against [a] defendant in individual arbitration according to the terms of the agreement, thus rendering his or her claim nonremediable." Having concluded that the plaintiffs in *Feeney II* had indeed made such a demonstration, we affirmed the ruling of a judge in the Superior Court invalidating a class action waiver in the parties' arbitration agreement. *Feeney II, supra.* Just eight days after the release of our decision in *Feeney II,* the Supreme Court issued an opinion in *American Express Co.* v. *Italian Colors Restaurant,* 133 S. Ct. 2304, 2312 (2013) (*Amex*), holding that a class action waiver in an arbitration agreement is enforceable under the FAA even if a plaintiff proves that the class waiver, combined with other onerous terms of the agreement, effectively precludes the plaintiff from vindicating his or her Federal statutory rights. Following the release of *Amex,* the defendants in *Feeney II* filed a petition for rehearing on the grounds that *Amex* abrogated *Feeney II.* We stayed the issuance of the rescript in *Feeney II* and invited the plaintiffs to submit a response, which they did. We conclude that following *Amex,* our analysis in *Feeney II* no longer comports with the Supreme Court's interpretation of the FAA.

In *Feeney II, supra,* we were asked to interpret and apply *Concepcion,* which held that the FAA preempted a California rule that "classif[ied] most collective-arbitration waivers in consumer contracts as unconscionable" because it stood "as an obstacle to the accomplishment and execution of the full purposes and objectives of [the FAA]" to ensure the enforcement of agreements to arbitrate according to their terms. *Id.* at 1746, 1753. Our holding in *Feeney II* derived, at least in part, from our belief that *Concepcion,* while severely constraining the grounds on which a court could invalidate a class waiver in an arbitration agreement as unconscionable or against public policy,

---

[1]Dedham Health and Athletic Complex, individually and on behalf of persons similarly situated.

[2]Formerly known as Dell Computer Corporation.

[3]Dell Catalog Sales Limited Partnership; Dell Marketing Limited Partnership; Qualxserv, LLC; and BancTec, Inc.

permitted the invalidation of a class waiver where that waiver "operate[s] in practice to deny a willing plaintiff any and all practical means of pursuing a claim against a defendant." *Feeney II*, *supra* at 491. After all, we observed, *Concepcion* went "to great length to demonstrate the overall fairness of [the parties' arbitration agreement] and the Court's belief that a consumer could successfully pursue a remedy under the regime it established." *Feeney II*, *supra* at 495, citing *Concepcion*, *supra* at 1753.

In *Amex*, the Supreme Court explicitly rejected our reading of *Concepcion*. As we observed in *Feeney II* (based on an earlier decision of the United States Court of Appeals for the Second Circuit in the *Amex* case), apart from the fact the plaintiffs in *Amex* asserted Federal statutory rights, the one critical difference between *Amex* and *Concepcion* was that the plaintiffs in *Amex* had actually demonstrated that "the cost of . . . individually arbitrating their dispute with Amex would be prohibitive, effectively depriving [them] of the statutory protections of the antitrust laws." *Feeney II*, *supra* at 500, quoting *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 197 198 (2d Cir. 2011), aff'd en banc, 667 F.3d 204 (2d Cir. 2012), rev'd sub nom. *Amex*, *supra*. Yet when *Amex* reached the Supreme Court, the Court remarked: "Truth to tell, our decision in [*Concepcion*] all but resolves this case. . . . We specifically rejected the argument that class arbitration was necessary to prosecute claims 'that might otherwise slip through the legal system.' " *Amex*, *supra* at 2312, quoting *Concepcion*, *supra* at 1753. The Court went on to state that *Concepcion* "established . . . that the FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims." *Amex*, *supra* at 2312 n.5. "Accordingly, the FAA . . . favor[s] the absence of litigation when that is the consequence of a class-action waiver, since its 'principal purpose' is the enforcement of arbitration agreements according to their terms." *Id.*, quoting *Concepcion*, *supra* at 1748.

Rejecting the *Amex* plaintiffs' argument that the class action waiver in question must be invalidated because, when combined with other terms of the arbitration agreement,[4] it required an individual plaintiff to spend "between several hundred thousand and one million dollars" to recover, at most, $38,000 in damages, *id.* at 2316 (Kagan, J., dissenting), the Court stated that "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy" (emphases in original). *Id.* at 2311. In doing so, the Court essentially held that as long as an arbitration agreement does not expressly "forbid[] the assertion of certain [Federal] statutory rights" or "perhaps" require the payment of "filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable," a plaintiff is not deprived of his or her *right to*

---

[4]Such other terms include, but are not limited to, a prohibition on any kind of joinder or consolidation of claims; a confidentiality provision that prevents an individual plaintiff from "informally arranging with other merchants to produce a common expert report"; and a prohibition on shifting costs to Amex even if the plaintiff prevails. *American Express Co.* v. *Italian Colors Restaurant*, 133 S. Ct. 2304, 2316 (2013) (*Amex*) (Kagan, J., dissenting). Amex also "refused to enter into any stipulations that would obviate or mitigate the need for the [cost-prohibitive] economic analysis [necessary to prove an antitrust violation]." *Id.*

*pursue* statutory remedies. *Id.* at 2310-2311.[5] The Court went so far as to characterize as "dictum" its statement in *Mistubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985), that "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."[6] *Amex, supra* at 2310. The Court thus made clear that its discussion in *Concepcion* of the likelihood that those plaintiffs' claims could be resolved in individual arbitration did not contribute to its holding in that case and, in doing so, thwarted our reliance in *Feeney II* on that discussion.

Ultimately, in *Amex*, the Supreme Court makes clear both that *Concepcion* is not entitled to the reading we afforded it in *Feeney II* and that the analysis the Court set forth in *Concepcion* (and reinforced in *Amex*) applies without regard to whether the claim sought to be vindicated arises under Federal or State law. See *Amex, supra* at 2312 & n.5. Although we regard as untenable the Supreme Court's view that "the FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims," *id.* at 2312 n.5, we are bound to accept that view as a controlling statement of Federal law.

In their response to the defendants' petition for rehearing, the plaintiffs raise several alternative grounds for denying the defendants' renewed motion to confirm the arbitration award of dismissal with prejudice that were not considered by the Superior Court judge. We decide today only that the class waiver may not be invalidated on the ground that it effectively denies the plaintiffs a remedy. We take no view on the other issues. The decision of the judge in the Superior Court denying the defendants' renewed motion to confirm the arbitration award is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

The case was submitted on briefs.

*John A. Shope* for the defendants.

*Edward D. Rapacki* for the plaintiffs.

---

[5]Without explanation, the Court thus expressly limited its statement in *Green Tree Fin. Corp.* v. *Randolph*, 531 U.S. 79, 90 (2000), that "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights" to situations where costs unique to the arbitral forum (like filing fees and administrative costs) make the bringing of claims impracticable. *Amex, supra* at 2310-2311. See *id.* at 2318 (Kagan, J., dissenting) ("The expense at issue in *Randolph* came from a filing fee combined with a per-diem payment for the arbitrator. But nothing about those particular costs is distinctive; and indeed, a rule confined to them would be weirdly idiosyncratic").

[6]The dissenting opinion in *Amex* rejects this treatment of *Mistubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), as "dead wrong." *Amex, supra* at 2317 n.3 (Kagan, J., dissenting).