NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12328


    WORLDWIDE TECHSERVICES, LLC  vs.  COMMISSIONER OF REVENUE
         & another[1] (and three consolidated cases[2]).



      Suffolk.     November 7, 2017. - February 22, 2018.

      Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher,
                     & Kafker, JJ.



Taxation, Abatement, Sales and use tax.  Practice, Civil,
     Abatement, Intervention.  Administrative Law, Intervention.
     Due Process of Law, Intervention in civil action.



      Appeal from a decision of the Appellate Tax Board.

      The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


      Edward D. Rapacki for the intervener.
      John A. Shope (Michael Hoven also present) for the
taxpayers.

---

      [1] Econo-Tennis Management Corp., intervener, doing business
as Dedham Health and Athletic Complex.

      [2] BancTec Third Party Maintenance, Inc. vs. Commissioner of
Revenue & another; QualxServ, LLC vs. Commissioner of Revenue &
another; and Dell Marketing L.P. vs. Commissioner of Revenue &
another.  Banctec Third Party Maintenance, Inc., is now known as
QualxServ Third Party Maintenance, Inc.; and QualxServ, LLC, is
now known as WorldWide TechServices, LLC.

Daniel J. Hammond, Assistant Attorney General (Daniel A. Shapiro also present) for Commissioner of Revenue.

Ben Robbins & Martin J. Newhouse, for New England Legal Foundation, amicus curiae, submitted a brief.

KAFKER, J.  Fifteen years and three Supreme Judicial Court decisions ago, this protracted case commenced regarding taxes imposed on computer service contracts.  The litigation began when purchasers of the service contracts filed a putative class action against the sellers,[3] claiming under G. L. c. 93A that the imposition of these taxes was unlawful and an unfair and deceptive practice.  The sellers successfully moved to compel arbitration pursuant to the terms of the computer service contracts, and a judge in the Superior Court eventually confirmed the award.  The next chapter in this tax saga, and the one we are required to decide today, then ensued.

For the sole and express purpose of hedging their bets in response to the class action, the sellers had applied for tax abatements from the Commissioner of Revenue (commissioner) beginning in 2004.  The commissioner denied the applications, and the sellers petitioned the Appellate Tax Board (board).  The appellant, Econo-Tennis Management Corp., doing business as Dedham Health and Athletic Complex (Dedham Health), one of the consumers who purchased these service contracts, moved to

---

[3] We refer to BancTec Third Party Maintenance, Inc., QualxServ, LLC, and Dell Marketing L.P., the corporate appellees in the present litigation, collectively as the "sellers."

intervene in the proceedings, which the board allowed. Thereafter, the board, with certain exceptions, reversed the decision of the commissioner and allowed the abatements, ordering the parties to compute the amounts to be abated. Taxes totaling $215.55 were imposed on the service contracts purchased by Dedham Health.[4] After the class action litigation on the claims under G. L. c. 93A ended in the sellers' favor, the sellers withdrew their tax abatement petitions with prejudice. Dedham Health moved to strike the withdrawals. The board denied the motion to strike the withdrawals and terminated the proceedings, deciding that "any pending or further motions . . . [were] moot" and that it would "take no further action on these appeals." Dedham Health now appeals from that order. We transferred Dedham Health's appeal to this court on our motion and now conclude that although the board did not err as a matter of law in allowing the sellers' withdrawals, the board's termination of the proceedings in their entirety, after permitting Dedham Health to intervene and allowing the abatements, was an error of law. After the sellers' withdrawals were allowed, Dedham Health should have been allowed to proceed

---

[4] The sellers note that the evidence in the record before the Appellate Tax Board (board) only reflects that Dedham Health paid a total of $45.60, not $215.55. For the purposes of this opinion, we need not address this issue.

as an intervener on its own claim to recover the taxes imposed on the service contracts it purchased.[5]

1. Background. The instant cases arise out of the same tax dispute at issue in Feeney v. Dell Inc., 454 Mass. 192 (2009) (Feeney I); Feeney v. Dell Inc., 465 Mass. 470 (2013) (Feeney II); and Feeney v. Dell Inc., 466 Mass. 1001 (2013) (Feeney III). As we summarized in Feeney I, supra at 194, "Dell Catalog Sales Limited Partnership (Dell Catalog) and Dell Marketing Limited Partnership (Dell Marketing), wholly owned subsidiaries of Dell Inc. (formerly Dell Computer Corporation), sold computers and related products to consumers and businesses and, in connection with such sales, also sold optional computer hardware service contracts under which [the sellers] agreed to provide onsite computer repairs to the purchasers." Dell Catalog and Dell Marketing collected tax on the optional service contracts from their customers and remitted the tax to the Department of Revenue. Id. at 194 & n.6. Under these service contracts, "BancTech, Inc. . . . ; QualxServ LLC; or Dell Marketing agreed to provide onsite computer repairs to the purchasers."[6] Id. at 194. Dedham Health was one such consumer who purchased Dell computer hardware and the accompanying

_____

[5] We acknowledge the amicus brief submitted by the New England Legal Foundation in support of the sellers.

[6] As noted in note 2, supra, the names of two of these companies have since changed.

service contracts.  Id.  Dedham Health asserted that the tax on the optional service contracts was improper.  Id. at 193.

Dedham Health and one other plaintiff who bought Dell hardware and service contracts[7] commenced a putative class action against Dell Computer Corporation (Dell Computer) in 2003, alleging that it had improperly collected and remitted tax on the service contracts that the plaintiffs purchased, and that collecting the tax violated the Massachusetts consumer protection act, G. L. c. 93A.  Id. at 193, 196.  "The 'Dell Terms and Conditions of Sale' . . . in effect at the time of the plaintiffs' purchases contain an arbitration clause compelling arbitration of any claim against Dell . . . and mandating that any such claims be arbitrated on an individual basis" (emphasis in original; footnote omitted).[8]  Id. at 194-195.  In July, 2003,

---

[7] The other plaintiff was John A. Feeney, now deceased, who is not a party to the present litigation.

[8] The relevant portion of the "Dell Terms and Conditions of Sale" provides:

"ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT AND EQUITABLE CLAIMS) AGAINST DELL, its agents, employees, successors, assigns or affiliates (collectively for purposes of this paragraph, 'Dell') arising from or relating to this Agreement, its interpretation, or the breach, termination or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase SHALL BE

Dell Computer moved to compel arbitration, and a judge in the Superior Court allowed the motion.  Id. at 196-197.  "[The plaintiffs] each filed a claim of arbitration 'under protest' in November, 2004."  Id. at 197.  The arbitrator denied the plaintiffs' request for class certification, and ruled in favor of the defendants on the merits in 2007.  Id. at 198.

"In February 2008, the plaintiffs moved in the Superior Court to vacate the arbitration award," but their motion was denied and the case was dismissed with prejudice.  Id.  The plaintiffs appealed, and we granted their application for direct appellate review.  Id.  In Feeney I, this court held that the arbitration clause was void as against public policy, and reinstated the Superior Court action.  Id. at 205, 214.  Less than two years later, the United States Supreme Court ruled in AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 351-352 (2011), that the Federal Arbitration Act precludes invalidating class waiver provisions in arbitration clauses on the basis of State public policy favoring class actions.  In response to Concepcion, we held in Feeney II that "a court may still

RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect (available via the Internet at http://www.arb-forum.com, or via telephone at 1-800-474-2371).  The arbitration will be limited solely to the dispute or controversy between Customer and Dell.  Any award of the arbitrator(s) shall be final and binding on each of the parties, and may be entered as a judgment in any court of competent jurisdiction."

invalidate a class waiver" post-Concepcion where, as here, "class proceedings are the only viable way for a consumer plaintiff to bring a claim against a defendant." Feeney II, 465 Mass. at 501-502. One week later, the United States Supreme Court held in American Express Co. v. Italian Colors Restaurant, 570 U.S. 228, 238-239 (2013) (Amex), that an arbitration agreement's class waiver is enforceable even if the class waiver effectively precludes the plaintiff from vindicating his or her Federal statutory rights. In light of the Supreme Court ruling in Amex, we held in Feeney III that the class waiver in the present case could not be invalidated for effectively denying the plaintiffs a remedy, and remanded the case to the Superior Court. Feeney III, 466 Mass. at 1003.

On remand, the Superior Court granted the sellers' motion to confirm the original arbitration award dismissing the plaintiffs' claims. Feeney vs. Dell Inc., Mass. Superior Ct., No. 2003-01158 (Middlesex County Oct. 24, 2013). The Appeals Court affirmed in a memorandum and order pursuant to its rule 1:28, 87 Mass. App. Ct. 1137 (2015), and this court denied the plaintiffs' application for further appellate review in October, 2015, ending the putative class action litigation.

While the putative class action was still ongoing, the sellers brought abatement claims against the commissioner for the taxes collected on the service contracts. The sellers

indicated in their abatement filings that they only sought abatement in the event that the class action litigation resulted in a judgment requiring the sellers to refund the taxes to their customers.  The sellers' filings stated that if they prevailed in the class action, they would withdraw their abatement applications.

The commissioner denied the sellers' abatement requests. The sellers filed timely petitions with the board challenging the commissioner's denial of their abatement requests, and the petitions were consolidated.  In their petitions to the board, the sellers again emphasized that they sought abatement to protect against a possible judgment against them in the putative class action litigation.

Dedham Health filed motions to intervene in the sellers' petitions before the board, arguing that it and "other similarly situated customers" were the "real parties in interest" because the customers were entitled to be refunded in the amount of any abatement paid out to the sellers.  Dedham Health also asserted that the commissioner prohibits customers from pursuing abatement claims themselves "where the challenged 'tax' was paid to, and remitted by, the seller."  However, Dedham Health did not ask for class action certification before the board because, as it conceded in its motion, "there is no procedure for certifying a class action to the [board]."  The board granted

9

Dedham Health's motions to intervene, concluding that it had alleged "sufficient facts . . . to support its claims that the parties may not be adequately representing Dedham Health's interests" and that Dedham Health had "a substantial interest in the subject matter of this litigation." In allowing Dedham Health's intervention, the board noted that it "in no way extends or expands the limitations contained in G. L. c. 62C, § 37," the statute that sets forth the procedure for pursuing abatement.

The parties submitted a joint statement of facts and a joint evidentiary record to the board. The board ruled in December, 2013, that, with certain exceptions, the transactions did not fall within the statutory or regulatory framework for taxation and thus the sellers had not been required to collect the taxes at issue, and were therefore entitled to an abatement of all such taxes they had remitted. The board directed the parties to "compute the amounts to be abated based on the foregoing findings and rulings." Because computing the abatement amounts would be a complex and expensive task, the board granted the sellers' motion to stay the board proceedings until all appeals in the putative class action litigation had been exhausted.[9]

---

[9] As grounds for their motion to stay, the sellers cited the significant expenses they would incur to compute the abatement

After the final dismissal of the putative class action in favor of the sellers, the sellers withdrew all of their petitions before the board.  Dedham Health filed a motion to strike the sellers' withdrawals, arguing that allowing the withdrawals would leave consumers without a forum to pursue a tax refund.  In July, 2016, the board denied Dedham Health's motion to strike.  Instead, the board ordered the proceedings closed in light of the sellers' withdrawals, ruling that "any pending or further motions and discovery are moot."  The board's ruling did not include a rationale for its decision.  Dedham Health did not request findings and a report, available pursuant to G. L. c. 58A, § 13.[10]

---

amounts, particularly in light of the sellers' anticipation that the Superior Court litigation would be resolved in their favor, at which time they intended to withdraw their petitions.

[10] The relevant portion of G. L. c. 58A, § 13, provides:

"[T]he board shall make such findings and report thereon if so requested by either party within ten days of a decision without findings of fact and shall issue said findings within three months of the request . . . .  Such report may, in the discretion of the board, contain an opinion in writing, in addition to the findings of fact and decision.  If no party requests such findings and report, all parties shall be deemed to have waived all rights of appeal to the appeals court upon questions as to the admission or exclusion of evidence, or as to whether a finding was warranted by the evidence. . . .  The decision of the board shall be final as to findings of fact.  Failure to comply with the time limits, as outlined above, shall not affect the validity of the board's decision."

On appeal, Dedham Health argues that the board (1) improperly denied Dedham Health's motion to strike the sellers' withdrawals, (2) incorrectly ruled that the withdrawals rendered all pending and future motions moot, and (3) violated Dedham Health's right to due process by terminating the proceedings. We examine each of these arguments in turn.

2. Discussion. Pursuant to G. L. c. 58A, § 13, when the board issues a final order without findings of fact, within ten days a party may request that the board issue findings of fact and a report. By failing to request findings and a report here, Dedham Health has "waived all rights of appeal . . . upon questions as to the admission or exclusion of evidence, or as to whether a finding was warranted by the evidence." G. L. c. 58A, § 13. See Assessors of Lynn v. Zayre Corp., 364 Mass. 335, 338 (1973). Our review of the board's decision is therefore limited to pure questions of law that were not otherwise waived. See Supermarkets Gen. Corp. v. Commissioner of Revenue, 402 Mass. 679, 681-682 (1988). Thus, we can only rule in Dedham Health's favor if the board erred as a matter of law. See id. We review the board's conclusions of law de novo. Regency Transp., Inc. v. Commissioner of Revenue, 473 Mass. 459, 464 (2016). "However, because the board is an agency charged with administering the tax law and has 'expertise in tax matters,' . . . we give weight to its interpretation of tax statutes, and

will affirm . . . if [the board's] interpretation is reasonable" (citations omitted).  AA Transp. Co. v. Commissioner of Revenue, 454 Mass. 114, 119 (2009).

a.  Withdrawal.  Dedham Health contends that the board erred in allowing the sellers to withdraw their petitions for abatement.  Dedham Health interprets the board's final order as being predicated on the board's assumption that it was required as a matter of law to accept the sellers' withdrawals and thus had no discretion to strike them.  On the basis of this assumption, Dedham Health asserts that the board did have discretion to strike the withdrawals, and that the board's failure to recognize its own discretion constituted an error of law.

As discussed, the board's final order did not include an explanation for its ruling.  Because Dedham Health chose not to request findings of fact and a report, we do not know the basis for the board's decision.  The board may have either (1) decided it had discretion to accept or reject the withdrawals, and chosen in the exercise of that discretion to accept the withdrawals; or (2) decided it had to accept the withdrawals as it lacked discretion to reject them as a matter of law.  We cannot assume, in the absence of such findings and report, that the board's decision was made on the latter basis, rather than the former, as Dedham Health contends.  Having failed to request

findings and a report, Dedham Health is left only with the argument that the board's decision to accept the withdrawals was improper as a matter of law in these circumstances.  See Supermarkets Gen. Corp., 402 Mass. at 681-682.

The board's rules expressly provide for withdrawals in certain circumstances:

> "When notice of the settlement of a pending appeal is received by the clerk from either party, <u>unless a withdrawal of the petition or agreement for decision is filed forthwith</u>, the clerk shall inform both parties or their attorneys by mail that the appeal should be disposed of by filing a withdrawal of the petition or agreement for decision according to the terms of the settlement" (emphasis added).

831 Code Mass. Regs. § 1.21 (2007) (rule 1.21).  Thus, at least where formal settlements are reached, the board expects that withdrawals be filed to formally dispose of the petition.  While no such formal settlement has been reached and the withdrawals here were not filed pursuant to rule 1.21, the sellers effectively accepted the tax liability in its entirety, and thereby withdrew their petitions for abatement.  Rule 1.21 thus provides support for the allowance and the board's acceptance of the withdrawals in the instant matter.

Prior decisions by this court have also recognized taxpayers' ability to withdraw and the board's ability to accept such withdrawals at various stages of administrative tax proceedings.  See D'Errico v. Assessors of Woburn, 384 Mass.

301, 309 (1981) ("plaintiff's remedy was to pursue his appeal from the decision of the [board], but he withdrew that appeal. This withdrawal . . . was perhaps an unfortunate tactical decision but not one which this court can undo"); O'Brien v. State Tax Comm'n, 339 Mass. 56, 61 (1959) ("Two of these [buses] were garaged in Massachusetts but these are not here involved for the applications for abatement of the excises with respect to them have been withdrawn"). See also AA Transp. Co., 454 Mass. at 117 n.5. Nor does Dedham Health argue otherwise; it contends only that the board had the discretion to strike the withdrawals, and did not recognize that it had such discretion. As explained above, Dedham Health waived that argument by not requesting findings and a report.

Without such findings and a report, we cannot conclude as a matter of law that the board abused its discretion in allowing the sellers' withdrawals in these circumstances. See O'Connor v. Director of the Div. of Employment Sec., 384 Mass. 798, 799 (1981) ("In the absence of either such a request or an indication from the District Court judge that he felt constrained to dismiss the notice of appeal because he thought such action to be mandatory, we conclude that the judge considered the dismissal to be a matter of discretion and further conclude that, if such dismissals are indeed discretionary, the challenged dismissal would not have amounted

to an abuse of discretion"). The proceedings had already gone on for thirteen years at that point; the putative class action lawsuit had ended in the sellers' favor; there were limited amounts of money at stake for individual purchasers; and only two plaintiffs had been identified in the class action, one of whom had died in the interim.[11]

Finally, the board's prior decision allowing Dedham Health to intervene on its own behalf lends further support to the board's discretion to accept the sellers' withdrawals. As an intervener, Dedham Health had rights separate from the sellers' rights. Thus, the sellers' withdrawal, by itself, did not leave Dedham Health without a right or remedy. We address those rights below.

b. Independent right to abatement. Dedham Health asserts that, as an intervening party, it had an independent right to continue to litigate the abatement proceedings even after the sellers' withdrawal. To determine Dedham Health's rights before the board, we look both to the statutory scheme of the tax in question and the rights the board provided Dedham Health as an intervener. Commissioner of Revenue v. A.W. Chesterton Co., 406

---

[11] We also conclude that it would have been within the board's discretion to deny the withdrawals, given the sellers' over-all responsibility for collecting and abating the tax, which, according to one filing by the commissioner, involved as much as $50 million and as many as 7 million to 10 million purchasers.

Mass. 466, 467-468 (1990) (abatement is created by statute, so board only has jurisdiction to extent prescribed by governing statute). This task is made somewhat more complicated by the fact that the board never made an explicit finding as to whether the taxes at issue were sales taxes, under the purview of G. L. c. 64H, or use taxes, under the purview of G. L. c. 64I.[12] We conclude that in these circumstances both statutory schemes place the legal responsibility for collecting and paying the taxes and seeking abatement on the sellers, leaving only limited rights to Dedham Health as an intervener.

i. Statutory rights. In Massachusetts, sales and use taxes are designed as "complementary components of a unitary taxing program created to reach all transactions . . . in which tangible personal property is sold inside or outside the Commonwealth for storage, use, or other consumption within the Commonwealth." Boston Tow Boat Co. v. State Tax Comm'n, 366 Mass. 474, 476-477 (1974). The sales tax is imposed on retail purchases made inside the Commonwealth. See G. L. c. 64H, § 2. The use tax, "designed to prevent loss of sales tax revenue from . . . out-of-State retail purchases," is imposed on retail purchases made outside the Commonwealth that are stored, used, or otherwise consumed in Massachusetts. D & H Distrib. Co. v.

_____

[12] The interlocutory order of the board concluding that the taxes were unlawful refers to the taxes collectively as "sales and use taxes."

Commissioner of Revenue, 477 Mass. 538, 540 (2017).  See G. L. c. 64I, § 3.  The sales tax and the use tax are mutually exclusive, and the tax rate is identical.  Regency Transp., Inc., 473 Mass. at 462.

Vendors are responsible for collecting and remitting the sales tax and therefore are the party entitled to seek abatement.  See G. L. c. 64H, § 3; First Agricultural Nat'l Bank of Berkshire County v. State Tax Comm'n, 353 Mass. 172, 179 (1967), rev'd on other grounds, 392 U.S. 339 (1968).  By contrast, purchasers are generally responsible for payment of the use tax.  See G. L. c. 64I, § 3.  However, in practice purchasers "seldom remit use tax of their own volition, and are not likely even to be aware of the requirement."  D & H Distrib. Co., 477 Mass. at 540.  Rather, for applicable purchases outside Massachusetts from a vendor who conducts business in Massachusetts, the vendor is required to collect and remit the use tax, as it would a sales tax.  See G. L. c. 64I, § 4.[13]  See also G. L. c. 64H, § 3.  More specifically:

---

[13] General Laws c. 64I, § 4, provides, in relevant part:

"Every vendor engaged in business in the commonwealth and making sales of tangible personal property or services for storage, use or other consumption in the commonwealth not exempted under this chapter, shall at the time of making the sales, or, if the storage, use or other consumption of the tangible personal property or services is not then taxable hereunder, at the time the storage, use or other consumption becomes taxable, collect the tax from

"Vendors 'engaged in business in the commonwealth' who sell tangible personal property or services 'for storage, use or other consumption in the commonwealth' are required to collect the tax from the purchaser and give the purchaser a receipt, unless the 'storage, use, or other consumption' is not 'taxable' at the time of sale, in which case vendors are required to collect the tax when storage, use, or other consumption 'becomes taxable.'"

Town Fair Tire Ctrs., Inc. v. Commissioner of Revenue, 454 Mass. 601, 606 (2009), quoting G. L. c. 64I, § 4.  In such instances where the vendor is required to collect the use tax, if the vendor fails to do so, the tax is "owed by the vendor to the commonwealth."  G. L. c. 64I, § 4.  See Town Fair Tire Ctrs., Inc., supra.[14]

---

the purchaser and give the purchaser a receipt therefor in the manner and form prescribed by the commissioner.  The tax required to be collected by the vendor shall constitute a debt owed by the vendor to the commonwealth.  Such vendor shall collect from the purchaser the full amount of the tax imposed by this chapter, or an amount equal as nearly as possible or practicable to the average equivalent thereof; and such tax shall be a debt from the purchaser to the vendor, when so added to the sales price, and shall be recoverable at law in the same manner as other debts."

[14] Under both tax schemes, when added to the sales price, the amount taxed becomes a "debt from the purchaser to the vendor."  See G. L. c. 64H, § 3; G. L. c. 64I, § 4.  Both schemes include a "bad debt" provision, wherein "any vendor who has paid to the commissioner a tax for a sale on credit is 'entitled' to reimbursement if the account 'is later determined to be worthless.'"  Household Retail Servs., Inc. v. Commissioner of Revenue, 448 Mass. 226, 229 (2007).  However, this provision is a mere "statutory courtesy," as the vendor is still legally responsible for paying the tax.  Id. at 230.  See Continental-Hyannis Furniture Co. v. State Tax Comm'n, 366 Mass. 308, 309 (1974) (prior to enactment of bad debt provision, vendor remained liable for sales tax even in instances where purchaser did not tender payment for tax).

Thus, where the vendor has collected and remitted the use tax, such that it mirrors the implementation of the sales tax, the vendor is legally responsible for the tax and becomes the party entitled to seek abatement.[15]

Here, the taxes at issue were collected and remitted by the sellers, not Dedham Health. Therefore, regardless of whether the taxes at issue were sales taxes or use taxes, the sellers were the party statutorily responsible for the payment of the tax and statutorily entitled to seek abatement, not Dedham Health. This is true even though the economic burden of the taxes at issue were passed along to Dedham Health. See First Agricultural Nat'l Bank of Berkshire County, 353 Mass. at 180 ("There is no necessary inconsistency between imposing the legal incidence of a tax upon the vendor, yet recognizing a statutory right in the vendor to shift the tax to the purchaser"). Placing the legal responsibility for the tax on vendors is also in accord with the purpose of the tax scheme. By making the vendors responsible, the Legislature adopted "what it believed to be the most efficacious method of ensuring the payment" of the tax. Baker Transport, Inc. v. State Tax Comm'n, 371 Mass.

---

[15] When abatement is sought for either tax, the vendor who collected the tax cannot, however, receive a refund until he or she demonstrates that "he [or she] has repaid to the purchaser the amount for which the application for refund is made." G. L. c. 62C, § 37.

872, 875-876 (1977) (Legislature's decision to require tax payment prior to issuance or transfer of vehicle registration was intended to ensure taxes paid on all taxable sales of motor vehicles). See First Agricultural Nat'l Bank of Berkshire County, supra at 178 ("practical considerations necessitate its collection and remission to the State by the vendor"). Because the vendor is already collecting the tax from the purchasers, placing the legal responsibility for collecting, paying, and abating the tax on the vendor is a logical way of administering the tax burden, such that the State does not have to pursue individual purchasers for payment.

ii. Intervener rights. Although Dedham Health was not statutorily entitled to seek abatement here, the board allowed Dedham Health to intervene in the proceedings before the board. The sellers argue that such intervention violated the statutory scheme. See A.W. Chesterton Co., 406 Mass. at 467-468, quoting Assessors of Boston v. Suffolk Law Sch., 295 Mass. 489, 492 (1936) ("Since the remedy by abatement is created by statute [the board] has no jurisdiction to entertain proceedings for relief by abatement begun at a later time or prosecuted in a different manner than is prescribed by the statute"). We disagree.

The board properly allowed the intervention in accordance with its own procedures. Under 831 Code Mass. Regs. § 1.37

(2007), the "practice and procedure before the [b]oard shall conform to that heretofore prevailing in equity causes . . . prior to the adoption of the Massachusetts Rules of Civil Procedure."[16]  Prior to the adoption of the Massachusetts Rules of Civil Procedure in 1973, an intervener needed a "substantial interest in the subject matter of the original litigation" to intervene in an equity claim.  See D.J. Doyle & Co. v. Darden, 328 Mass. 288, 290 (1952); Check v. Kaplan, 280 Mass. 170, 178 (1932).  Here, the board determined that "Dedham Health has alleged sufficient facts relating to the subject matter of these appeals to support its claims that the parties may not be adequately representing [Dedham Health's] interests and therefore [Dedham Health has] a substantial interest in the subject matter of this litigation."  The board also correctly cited controlling authority in its order allowing Dedham Health to intervene.  See Check, supra.

In these circumstances, where the board ordered an abatement, but where the sellers indicated they would withdraw from the abatement proceedings if the putative class action were dismissed, allowing Dedham Health to intervene was appropriate. The board correctly recognized that Dedham Health, as the purchaser whose money was used to pay the tax, had a substantial

_____

[16] This provision of the Code of Massachusetts Regulations also states that "substance and not form shall govern" in these proceedings.  831 Code Mass. Regs. § 1.37 (2007).

interest in the abatement and that the sellers had no intention or incentive to protect that interest.  Intervention was an appropriate means of protecting Dedham Health's substantial interest, while also respecting the statutory structure and the expertise of the board.  See Raytheon Co. v. Commissioner of Revenue, 455 Mass. 334, 337 (2009); French v. Assessors of Boston, 383 Mass. 481, 482 (1981) ("We have long recognized the board's expertise in tax matters").

As an intervener, Dedham Health became a party to the abatement proceedings entitled to protect its interest in the abatement.  See Spence v. Boston Edison Co., 390 Mass. 604, 611 (1983); American Hoechest Corp. v. Department of Pub. Utils., 379 Mass. 408, 410 (1980); Check, 280 Mass. at 178.  Cf. Mass. R. Civ. P. 24, 365 Mass. 769 (1974); Massachusetts Fed'n of Teachers, AFT, AFL-CIO v. School Comm. of Chelsea, 409 Mass. 203, 205 (1991) (specifying conditions under which party has right to intervention); May v. Commissioner of Internal Revenue, 553 F.2d 1207, 1208 (9th Cir. 1977) (per curiam) ("Intervention in a proceeding before [the Tax Court] has been held to be within the sound discretion of the Tax Court").  Indeed, the board expressly rejected attempts to limit Dedham Health's role to that of an amicus allowed only to brief and argue before the board.

Both the sellers and the commissioner contend that Dedham Health has no right to recover the taxes it paid, as an intervener or otherwise, because Dedham Health did not file a request for abatement on its own.  They make this argument despite recognizing that such a request would have been denied and was thus futile.  See Sullivan v. Brookline, 435 Mass. 353, 355 n.1 (2001) (where no administrative remedy exists, plaintiff is "not subject to any exhaustion requirement"); Massachusetts Bay Transp. Auth. v. Labor Relations Comm'n, 425 Mass. 253, 258 (1997) (exhaustion not required where it would be futile).  Indeed, the commissioner concedes that he would deny any such application, as would the board, because neither the commissioner nor the board recognizes a purchaser's right to seek abatement independently.  In other words, Dedham Health's other avenue of relief was to chase a separate ostensible "remedy" that would be denied as soon as it was pursued.  We do not find this argument compelling.

The commissioner also suggests that Dedham Health could instead sue the sellers, relying on G. L. c. 64H, § 3 (a).  The commissioner's interpretation of G. L. c. 64H, § 3 (a), however, runs contrary to the plain meaning of this provision.  General Laws c. 64H, § 3 (a), requires the purchaser to reimburse the vendor for the sales tax that the vendor is statutorily required to remit to the Commonwealth.  It is designed to protect the

vendor by imposing a reimbursement requirement on the purchaser. As explained by the amicus: "Nowhere does G. L. c. 64H, § [3 (a),] mention or even suggest any right of action by the purchaser against the vendor."

We recognize that Dedham Health's rights as an intervener were limited. It did not have the same statutory powers and responsibilities as the sellers, and thus could not seek to displace the sellers or play an equivalent role in the abatement process. The intervention order itself expressly stated that it "in no way extends or expands the limitations contained in G. L. c. 62C, § 37." Dedham Health's rights were appropriately limited to defending its own interest in the abatement that applied to its own transactions. It was not allowed or entitled to step into the sellers' shoes or to intervene, as Dedham Health suggests, as to the entirety of the sellers' tax abatement claims.

Although these rights were limited, we conclude that their existence could not be entirely contingent on the sellers' decision whether to continue the abatement process, once it had begun. In the instant cases, the board made this exact legal error. It decided Dedham Health had a substantial interest in the abatement and a limited right to intervene to defend that interest, but as soon as the sellers filed their withdrawals, the board terminated the proceedings, eliminating both the

interest and the right. In these circumstances, where the board had already found that the taxes were improperly imposed, it could not simply terminate the proceedings and leave Dedham Health without a remedy. See Spence, 390 Mass. at 611; American Hoechest Corp., 379 Mass. at 410; Check, 280 Mass. at 178. Cf. Mass. R. Civ. P. 24. Dedham Health should have been permitted to proceed after the sellers' withdrawal to recoup the tax payment the board found had been unlawfully imposed on Dedham Health. We therefore conclude that the board erred as a matter of law by instead choosing to terminate the proceedings after the sellers' unilateral withdrawal.

c. Due process. Dedham Health also contends that terminating the abatement proceedings over its objection violates its constitutional right not to be deprived of property without due process of law. Because we conclude that the board erred as a matter of law where it allowed Dedham Health to intervene and then took away that right and remedy when the sellers filed their withdrawals, we need not address this argument. Cf. Commonwealth v. Disler, 451 Mass. 216, 228 (2008) ("It is, of course, our duty to construe statutes so as to avoid such constitutional difficulties, if reasonable principles of interpretation permit it [citation and quotations omitted]); Textron Inc. v. Commissioner of Revenue, 435 Mass. 297, 307 (2001), cert. denied, 535 U.S. 986 (2002) ("As head of the

agency charged with administering the corporate excise tax statutes, the commissioner has lawful discretion . . . to interpret a statute in a manner that avoids potential constitutional issues").

3. Conclusion. For the reasons discussed above, we reverse the final order of the board and remand for further proceedings consistent with this opinion.

So ordered.